UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

THE CITY OF NEW YORK,

                                    Plaintiff,                    Civil Action No. 19-cv-3998

                    -against-
                                                                 **COMPLAINT**

CIGARETTES UNLIMITED, L.C., JOHN A. LASH, III,
ANITA LASH, STEPHEN DABNEY RILEY, SHANA L.
BILLER, MARY RILEY, MARGARET L. CLARK,
CANDICE S. FOX, MONIQUE PEARSON, JULIUS
PETERS-BRANDON, JOANNA S. PETTIES, PAULA K.
SLOAN,   DERRICK   L.   WHITING,   JESSICA
WHITEHEAD, ELIZABETH R. WINDHAM, DEBRA A.
ANTICO,    JOSEPH   N.   ANTICO,   THOMAS
GUGLIELMO, MERYLE MCGOWAN, ROBERT A.
SCHMIDT, RAZIK K. SHARKI, and John or Jane Doe 1-
30,

                                    Defendants.

---------------------------------------------------------------------- x

        Plaintiff the City of New York (the "City"), by its counsel, Zachary W. Carter,

Corporation Counsel of the City of New York, respectfully alleges, with knowledge of its own

actions and on information and belief as to the actions of others, as follows:

## NATURE OF THE ACTION

        1.      This is an action for injunctive relief, damages and penalties arising out of the

trafficking of "untaxed" cigarettes[1] into New York City by a racketeering enterprise referred to

herein as the "Cigarettes Unlimited Enterprise." The Cigarettes Unlimited Enterprise consists of

---

[1] As explained more fully below, "untaxed" cigarettes are those on which New York State and City cigarette excise taxes should have been, but are not, pre-paid because the defendants evade the cigarette distribution system mandated by New York law.

individuals associated together for the purpose of distributing untaxed cigarettes in New York City.

2.     The Cigarettes Unlimited Enterprise has engaged for at least the last ten years in the shipment, transport, receipt, possession, distribution and sale of massive quantities of untaxed cigarettes in and into New York, resulting in an estimated $27 million tax loss to the City and an incalculable injury to the public health.

3.     The $58.50 per carton cigarette excise tax that must be paid for cigarettes legally sold in New York City gives rise to higher retail cigarette prices in the City than in Virginia, where the cigarette tax is $3.40 per carton. The members of the Cigarettes Unlimited Enterprise reap an enormous, illegal profit by acquiring far cheaper Virginia-taxed cigarettes and arranging for their transport and sale in New York, at prices less than the New York market price but well above the Virginia purchase-price. The scheme is not of recent vintage. See United States v. Di Maria, 727 F.2d 265 (2d Cir. 1984) ("'Bootleg cigarettes' are those purchased in a low-tax state, e.g., [Virginia], and then transported to a high-tax state, e.g., New York.").

4.     Cigarettes Unlimited, L.C. ("Cigarettes Unlimited") is a Virginia tobacco products retailer that operates three retail locations, purchasing an inventory of cigarettes at wholesale in Virginia, and paying the $3.40 per carton tax for Virginia-stamped cigarettes. Cigarettes Unlimited then sells out-sized portions of its inventory of Virginia-stamped cigarettes to individuals known to Cigarettes Unlimited's owners and employees to shuttle between Virginia and New York, buying low in Virginia, and selling high in New York. All parties to the transactions profit from the arbitrage opportunity created by the tax difference between the two states.

5.      Defendants John A. Lash, III, Anita Lash, Stephen D. Riley, Mary Riley, Margaret L. Clark, Julius Peters-Brandon, Joanna S. Petties, Paula K. Sloan, Derrick L. Whiting, Elizabeth R. Windham and John or Jane Doe 1-15 are owner/principals, associates or employees of Cigarettes Unlimited (hereafter, when referred to collectively, the "Cigarettes Unlimited Defendants").

6.      Defendants Debra A. Antico, Joseph N. Antico, Thomas Guglielmo, Meryle McGowan, Robert A. Schmidt, Razik K. Sharki and John or Jane Doe 16-30 purchase cigarettes in Virginia from Cigarettes Unlimited, transporting them to New York City (hereafter, when referred to collectively, the "Traffickers").

7.      Collectively, the Traffickers make monthly purchases from Cigarettes Unlimited and the Cigarettes Unlimited Defendants of as much as 15,000 cartons of cigarettes, and have done so over the course of years, transporting the cigarettes to New York City, principally to Staten Island and Brooklyn, for later sale.

8.      By shipping, transporting, receiving, possessing, distributing and selling cigarettes in and into New York City that are not affixed with the joint New York State and City tax stamp, the Cigarettes Unlimited Defendants and the Traffickers engage in transactions with "contraband cigarettes" as defined by the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 et seq. ("CCTA").[2] In associating with one another to engage in cigarette trafficking, the Cigarettes Unlimited Defendants and the Traffickers operate as a racketeering enterprise as defined by the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO").

---

[2] Cigarettes possessed for sale or use in New York City must be affixed with New York State and New York City excise tax stamps, the purchase of which serves as the pre-payment of State and City cigarette excise taxes. Cigarettes found in New York that do not bear New York tax stamps are "contraband" cigarettes within the meaning of the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341 *et seq.*, regardless of whether the cigarettes bear a tax stamp of another jurisdiction.

9.      In failing to file with New York City and State tax administrators reports detailing their cigarette deliveries into New York, the Cigarettes Unlimited Defendants and the Traffickers violate the Jenkins Act, 15 U.S.C. § 375 et seq., (as amended by the Prevent All Cigarette Trafficking Act of 2010) (collectively, the "PACT Act")), whether or not the cigarettes are affixed with New York tax stamps.

10.      The Cigarettes Unlimited and the Trafficker Defendants separately violate the PACT Act by delivering cigarettes into New York without complying with New York laws governing the sale and distribution of cigarettes, including but not limited to laws requiring tax stamps to be affixed to all cigarettes possessed for sale in New York.

11.      The Cigarettes Unlimited and the Trafficker Defendants separately violate New York Public Health Law §1399-ll ("NY PHL 1399-ll") by delivering cigarettes to persons not licensed to operate tobacco businesses, regardless of whether the cigarettes are affixed with tax stamps,.

12.      The violations of the law described above injure the public health and the fiscal interests of New York City, entitling the City to an order; i) enjoining the defendants from shipping, transporting, receiving, possessing, distributing and selling contraband cigarettes into New York City and State in violation of the CCTA and RICO; (ii) enjoining the defendants from delivering cigarettes into New York City and State without reporting the sales to New York City and State tax administrators and without complying with New York laws applicable to cigarette sales, in violation of the PACT Act; (iii) enjoining the defendants from shipping cigarettes to persons not licensed to operate tobacco businesses in New York City and State, in violation of NY PHL § 1399-ll;  (iv) requiring the defendants jointly and severally to pay the City money damages under the CCTA in an amount equal to the amount of the New York City cigarette tax

that should have been paid on each carton of cigarettes trafficked into New York City; (v) under RICO, requiring the defendants jointly and severally to pay the City money damages equal to three times the amount of the damages awarded under the CCTA; (v) awarding civil penalties under the CCTA, PACT Act and NY PHL § 1399-ll and (vi) awarding attorney's fees provided for under the RICO statute.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 378, 18 U.S.C. § 1964, 18 U.S.C. § 2346 (b)(1), 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).

14.     Venue is proper in this district under 18 U.S.C. § 1965(a) and (b) and 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to the claims occurred in this district.

## PARTIES

15.     The City is a municipal corporation organized under the laws of the State of New York.

16.     Cigarettes Unlimited, L.C. is a limited liability company formed under the laws of the State of Virginia with a principal place of business at RR 2, Box 269C Heathsville, VA 22473.   Cigarettes Unlimited currently operates three retail stores: at 5079 Jefferson Davis Hwy, Fredericksburg, VA, 22408 ("CU-Fredericksburg"), at 712 Warrenton Road, Suite A, Fredericksburg, VA 22406 ("CU-Stafford"), and at 4315 Dale Blvd., Dale City, VA 22193 ("CU-Dale City").

17.     Defendant John A. Lash, III is a resident of the State of Virginia, residing at 12601 Grampion Lane, Chesterfield, VA 23838. John A. Lash, III is an owner of Cigarettes Unlimited, L.C.

18.     Defendant Anita Lash is a resident of the State of Virginia, residing at 12601 Grampion Lane, Chesterfield, VA 23838, and is an employee or is associated with Cigarettes Unlimited, L.C.

19.     Defendant Stephen D. Riley is a resident of the State of Virginia, residing at 8866 Ringview Drive, Mechanicsville, VA 23116 and at 662 Harveys Neck Road, Heathsville, VA 22473. Stephen D. Riley is an owner of and the president of Cigarettes Unlimited, L.C.

20.     Defendant Mary Riley is a resident of the State of Virginia, residing at 662 Harveys Neck Road, Heathsville, VA 22473, and is an employee or is associated with Cigarettes Unlimited, L.C.

21.     Defendant Shana L. Biller is a resident of the State of Virginia, residing at 14707 Endsley Turn, Woodbridge, VA 22194, and is an employee of Cigarettes Unlimited, L.C.

22.     Defendant Margaret L. Clark is a resident of the State of Virginia, residing at 311 Green Arbor Drive, Fredericksburg, VA 22407 and is an employee of Cigarettes Unlimited, L.C.

23.     Defendant Candice S. Fox is a resident of the State of Virginia, residing at 3816 Findley Road, Woodbridge, VA 22193, and is an employee of Cigarettes Unlimited, L.C.

24.     Defendant Julius Peters-Brandon is a resident of the State of Virginia, residing at 4050 Tarpon Lane, Woodbridge, VA 22193.  Julius Peters-Brandon is an employee of Cigarettes Unlimited and the manager of Cigarettes Unlimited at the Dale City location.

25.     Defendant Monique M. Pearson is a resident of the State of Virginia, residing at 4015 Farrington Ct., Woodbridge, VA 22193, and is an employee of Cigarettes Unlimited, L.C.

26.     Defendant Joanna S. Petties is a resident of the State of Virginia, residing at 10707 White Pines Lane, Fredericksburg, VA 22407and is an employee of Cigarettes Unlimited, L.C.

27.     Defendant Paula K. Sloan is a resident of the State of Virginia, residing at 3816 Findley Road, Woodbridge, VA 22193, and is an employee of Cigarettes Unlimited L.C. Dale City location.

28.     Jesse Whitehead is a resident of the State of Virginia, residing at 4422 Hendricks Drive, Woodbridge, VA 22194, and is an employee of Cigarettes Unlimited, L.C.

29.     Derrick L. Whiting is a resident of the State of Virginia, residing at 200 Merlin Way, Apt 202, Fredericksburg, VA 22406 and is an employee of Cigarettes Unlimited and the manager of Cigarettes Unlimited, L.C. Stafford location.

30.     Defendant Elizabeth R. Windham is a resident of the State of Virginia, residing at 220 Empress Alexandra Place, Fredericksburg, VA 22406, and is an employee of Cigarettes Unlimited, L.C.

31.     Defendant Debra A. Antico is a resident of the State of New York, residing at 69 Stepney St., Staten Island, NY 10314.

32.     Defendant Joseph N. Antico is a resident of the State of New York, residing at 60A Selvin Loop, Staten Island, NY 10303.

33.     Defendant Thomas Guglielmo is a resident of the State of New York, residing at 69 Ericka Loop, Staten Island, NY 10312.

34.     Defendant Meryle McGowan is a resident of the State of New York, residing at 276 Marlborough Road, Brooklyn, NY 11226.

35.     Defendant Robert A. Schmidt is a resident of the State of New York, residing at 324 Isabela Ave, Staten Island, NY 10306

36.     Defendant Razik Sharki is a resident of the State of New York, residing 67 Indale Ave, Staten Island, NY 10309.

37.     Defendants John or Jane Doe 1-15 are residents of the State of Virginia who are owners, managers, employees, or associates of Cigarettes Unlimited, L.C. whose precise identity is unknown to the City at this time.

38.     Defendants John or Jane Doe 16-30 are residents of the State of New York who purchase cigarettes from Cigarettes Unlimited, L.C. and transport the cigarettes to New York City for subsequent sale whose precise identity is unknown to the City at this time.

### BACKGROUND

39.     Cigarette smoking is a leading cause of preventable premature death in the United States and in New York State. Smoking annually kills more than 480,000 people nationwide; tobacco use kills between 26,000 and 28,000 New Yorkers each year, a figure that exceeds the combined number of deaths from alcohol, motor vehicles accidents, and firearms.

40.     Smoking-related disease is a substantial drain on the public treasury, costing approximately $300 billion a year in medical care costs and lost productivity.  New Yorkers spend approximately $10.4 billion a year in health-care costs related to tobacco use, which includes $3.3 billion in Medicaid expenditures.

41.     The public health and economic costs of tobacco use have compelled all levels of government to regulate strictly the sale and use of tobacco.  Numerous studies have shown that smoking is most effectively discouraged by increasing the cost of cigarettes through the imposition of high cigarette taxes.  Report of the Surgeon General, *How Tobacco Smoke Causes*

*Disease: The Biology and Behavioral Basis for Smoking-Attributable Disease*, at 654 (2010) (noting that "increases in the price of cigarettes through excise taxes . . . are an effective policy intervention to prevent smoking initiation among adolescents and young adults, reduce cigarette consumption, and increase the number of smokers who quit"); Report of the Surgeon General, *E-Cigarette Use Among Youth and Young* Adults, at 155 (2016) ("[t]he sizeable body of research examining the effects of taxes and prices on the sale and use of conventional cigarettes . . . leads to the conclusion that price increases resulting from higher excise taxes are effective tools for reducing cigarette consumption, especially among youth"); Nathan J. Doogan, et al., *The impact of a federal cigarette minimum pack price policy on cigarette use in the USA*, Tobacco Control, 27:203-208 (2018).[3]  To discourage cigarette use, New York City and State have imposed among the highest tobacco taxes in the nation.

42.     The relationship between cigarette prices and public health is sufficiently close that the rate of infant mortality in a particular jurisdiction are affected by cigarette prices in that jurisdiction, so much so that researchers have stated that "Federal and state policymakers may consider increases in cigarette taxes as a primary prevention strategy for infant mortality."[4]

---

[3] *See also* Martijin van Hasselt, et al., The relation between tobacco taxes and youth and young adult smoking: What happened following the 2009 U.S. federal tax increase on cigarettes?, Addictive Behaviors, 45:104-109 (2015); Chaloupka FJ, Yurekli A, Fong GT. Tobacco taxes as a tobacco control strategy. Tob Control 2012;21:172–80; Inst. of Med., Ending the Tobacco Problem: A Blueprint for the Nation 80, 182 (2007); *Prevent All Cigarette Trafficking Act of 2007, and the Smuggled Tobacco Prevention Act of 2008: Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, Serial No. 110-47, at 52 (May 1, 2008) (Statement of Matthew L. Myers, President, Campaign for Tobacco-Free Kids); International Agency for Research on Cancer (IARC) Handbook of Cancer Prevention Volume 14: Effectiveness of Tax and Price Policies for Tobacco Control. *See* chapters 5 (adult) and 6 (youth) (the response of youths to increases in cigarette prices is even greater, with a ten-percent price increase reducing the number of youth smokers by an estimated six or seven percent).

[4] http://pediatrics.aappublications.org/content/137/1/e20152901#F2.

## CIGARETTE TAXATION AND REGULATION IN NEW YORK

43.     The State and City of New York each impose a separate excise tax on cigarettes. With exceptions not relevant to this complaint, the tax applies to all cigarettes possessed for sale or use in the State or City.[5] All cigarettes present in the State are presumed subject to the cigarette tax until the possessor establishes the contrary. New York Tax Law § 471, § 471-a; Administrative Code of the City of New York ("Ad. Code") § 11-1302.

44.     One carton of cigarettes contains ten (10) packs of twenty (20) cigarettes.  At all times relevant to this complaint, the New York City excise tax has been $1.50 per pack or $15.00 per carton. At all times relevant to this complaint, the New York State excise tax has been $4.35 per pack or $43.50 per carton.

45.     All cigarettes possessed for sale in New York State and City, with exceptions not relevant to this complaint, must bear tax stamps, which serve as proof that the tax has been paid. N.Y. Tax L. § 471; 20 N.Y.C.R.R. § 76.1(a)(1); Ad. Code § 11-1302(g). Every pack of cigarettes in New York State, with exceptions not relevant here, is required to have affixed to it a New York State excise tax stamp, evidencing tax paid to the State of $4.35. Every pack of cigarettes in New York City is required to have affixed to it a joint New York State/New York City tax stamp, the City's share of which is $1.50 in tax.

46.     State and City cigarette excise taxes, with exceptions not relevant here, are permissibly paid exclusively by "cigarette stamping agents," usually wholesale cigarette dealers, licensed by the State and City of New York expressly to first purchase and then affix tax stamps to the cigarettes then sold at wholesale.  The price of the tax stamp purchased and affixed by the stamping agent is approximately equal to the amount of the tax due, plus "pre-paid" sales tax (at

---

[5] The "use" of cigarettes in the State or City is "any exercise of a right or power, actual or constructive, including but not limited to receipt, storage or any keeping or retention for any length of time."  New York Tax Law § 471-a, Ad. Code § 11-1301(4).

a rate set annually by the New York State Department of Taxation and Finance). By purchasing and affixing a cigarette tax stamp to every package of cigarettes possessed by the agent for sale in the State and/or City, the tax is paid, with the stamp serving as proof of payment.  N.Y. Tax L. § 471; 20 N.Y.C.R.R. § 76.1(a)(1); Ad. Code § 11-1302(e).

47.     New York State mandates that stamping agents serve as the only entry point for cigarettes into New York's stream of commerce. With exceptions not relevant here, no other person other than a stamping agent is liable for or authorized to pay the cigarette tax. By law, the stamping agent must incorporate the amount of the tax into the price of the cigarettes, thereby passing the tax burden, not the tax itself, to each subsequent purchaser of the cigarettes in the distribution chain, and ultimately to the consumer, as required under N.Y. Tax L. § 471 and Ad. Code Ad. Code § 11-1302(e) and (h).

## CIGARETTE TAX AVOIDANCE PRACTICES

48.     State and local governments independently set the amount of imposed cigarette taxes in their jurisdiction, giving rise to significant differences in cigarette prices among different taxing jurisdictions. Cigarettes can therefore be purchased at far lower prices in jurisdictions that impose low cigarette taxes than in jurisdictions that impose high cigarette taxes. New York State and City cigarette taxes combine to form the highest cigarette tax in the nation.

49.     The price differences created by varying tax rates yield schemes to evade cigarette taxes when residents of high-tax jurisdictions seek to take illegal advantage of the lower purchase prices available in low-tax jurisdictions.  Smugglers earn substantial profits by exploiting this "cross-border" market, purchasing at the low prices available in low-tax jurisdictions and selling the cigarettes at higher, but still below-market prices in high-tax jurisdictions.

50.     The availability of cigarettes at a purchase price that has been reduced below the market price prevailing in a particular jurisdiction as a result of the non-payment of taxes owed on the cigarettes undercuts the deterrent effect of high cigarette prices, so that "limit[ing] smuggling and the availability of untaxed tobacco products is essential to maximizing the effectiveness of higher taxes in reducing tobacco use[.]" Report of the Surgeon General, *How Tobacco Smoke Causes Disease: The Biology and Behavioral Basis for Smoking-Attributable Disease* (2010), at 654[6]; Nathan J. Doogan, et al., *The Impact of a Federal Cigarette Minimum Pack Price Policy On Cigarette Use In The USA*, Tobacco Control, 27:203-208 (2018).

51.     Any contention that cigarette tax evasion is caused by the choice of a jurisdiction to impose high taxes is incorrect on its face.  It is self-evident that it is the price disparity, not high or low taxes *per se* that creates the opportunity for arbitrage. The price disparities that yield cross-border smuggling are equally attributable to the choice of tobacco-producing jurisdictions to favor local tobacco sales by imposing low taxes as they are to the choice of jurisdictions that seek to reduce health care costs by imposing high taxes.

## ACTIONS OF THE DEFENDANTS

52.     Cigarettes Unlimited purports to be engaged in the retail sale of cigarettes and other tobacco and nicotine products. Cigarettes Unlimited's three retail stores are owned by Defendants Lash and Riley, and operated by them and their wives, Anita Lash and Mary Riley. The Cigarettes Unlimited stores are also operated by employees Shana L. Biller, Margaret L. Clark, Candice S. Fox, Monique Pearson, Julius Peters-Brandon, Joanna S. Petties, Paula K.

---

[6] *Available at*  http://www.cdc.gov/tobacco/data_statistics/sgr/2010/index.htm. ("Untaxed" cigarettes are those in which the tax owed on the cigarettes has not been paid.  Untaxed cigarettes may be profitably sold at lower prices because the seller did not incur the cost of taxes.")

Sloan, Derrick L. Whiting, Jessica Whitehead, Elizabeth R. Windham and John or Jane Does 1-15.

53.     Cigarettes Unlimited is not a New York-licensed stamping agent, nor are any of the Traffickers.  The Traffickers are not otherwise licensed to deal in cigarettes in New York State or City.

54.     Cigarettes Unlimited's three retail stores, CU-Fredericksburg, CU-Stafford and CU-Dale City are each involved with supplying cigarettes to the Traffickers.

55.     The Cigarettes Unlimited stores purchase Virginia-taxed cigarettes from Atlantic Dominion Distributors, a convenience store supplier, and maintain an inventory of cigarettes in each of the three Cigarettes Unlimited retail locations.

56.     The Traffickers purchase Virginia-taxed cigarettes from Cigarettes Unlimited at the CU-Fredericksburg, CU-Stafford, and CU-Daly City stores and transport the cigarettes in their personal vehicles, which bear New York license plates, to residential locations in Brooklyn and Staten Island, where the cigarettes are stored and then sold to others.

57.     The Traffickers telephone their orders to Cigarettes Unlimited, from telephone numbers identifiable as having New York City area codes, typically on the same day of the week. The cigarette orders are then passed internally to Cigarettes Unlimited's employees. The employees assemble the order for a particular Trafficker and set the order aside in advance of the Trafficker's arrival, also typically on the same day each week.

58.     The Traffickers arrive at Cigarettes Unlimited's retail locations with large amounts of cash, which are bought into the stores to pay for the cigarettes. IRS Form 8300, Report of Cash Payments Over $10,000 Received in a Trade or Business, requires that a transaction in which a business receives more than $10,000 in cash from one buyer in a single

transaction or two or more related transactions be reported to the IRS. Cigarettes Unlimited never reports its cash sales to the Traffickers.

59.     After entering the stores with satchels of cash and leaving without them, the Traffickers load into their vehicles black plastic bags that appear to be filled with master cases or half-cases of cigarettes.[7] Cigarettes Unlimited's employees frequently assist in loading the purchases into the Traffickers' vehicles, which bear New York plates.

60.     Upon leaving Cigarettes Unlimited's retail locations, the Traffickers have on numerous occasions been observed in their vehicles in Maryland, Delaware, New Jersey and New York City.

61.     The Traffickers include:

    a.  Defendant Debra Antico, 69 Stepney St., Staten Island, NY 10314, who buys Virginia-stamped cigarettes from CU-Dale City and transports the cigarettes to her New York City residence, where the cigarettes are held for re-sale. Debra Antico has stated that she generally places her orders for cigarettes in telephone calls with Julius Brandon-Peters or Paula K. Sloan. Examples of cigarette trafficking to New York by Debra Antico include but are not limited to:

        i.  On or about April 17, 2019, Debra Antico purchased from CU-Dale City approximately 386 cartons of cigarettes and transported the cigarettes to New York City.

        ii.  On or about April 19, 2019, Debra Antico purchased from CU-Dale City approximately 79 cartons of cigarettes and transported the cigarettes to New York City.

        iii.  On or about April 24, 2019, Debra Antico purchased from CU-Dale City approximately 178 cartons of cigarettes and transported the cigarettes to New York City.

---

[7] A master case of cigarettes contains 60 cartons of cigarettes; a half-case contains 30 cartons.

iv.  On or about April 26, 2019, Debra Antico purchased from CU-Dale City approximately 99 cartons of cigarettes and transported the cigarettes to New York City.

v.  On or about May 8, 2019, Debra and Joseph Antico arrived at CU-Dale City and loaded approximately six half-cases of cigarettes and some additional loose cartons into their vehicle (NY JDB 4386).  They transported the cigarettes to 69 Stepney St., Staten Island, NY.

vi.  On or about May 10, 2019, Debra Antico purchased from CU-Dale City approximately 184 cartons of cigarettes and transported the cigarettes to New York City.

vii.  On or about May 15, 2019, Debra Antico purchased from CU-Dale City an unknown number of cartons of cigarettes and transported the cigarettes to New York City.

viii.  On or about May 22, 2019, Debra and Joseph Antico purchased approximately 400 cartons of cigarettes from CU-Dale City and loaded them into her vehicle (NY JDB-4386) and transported the cigarettes to Staten Island, where some of the cigarettes were unloaded at 69 Ericka Loop, the residence of defendant Thomas Guglielmo, and the remainder unloaded at 69 Stepney St., Staten Island.  Debra Antico was at that time arrested at her residence and charged with possession of 83.8 cartons of Virginia-stamped cigarettes.

When questioned, Debra Antico stated she "does not bring cigarettes to bodegas and restaurants." "She has a "relationship with Rob [Schmidt] in regards to going down to buy cigarettes from different locations."  Debra Antico further stated that "I go down to Virginia once a week in order to buy various brands of cigarettes. I get the money to buy the cigarettes from friends and family in order to buy them cigarettes. I call a week in advance to make an order to pick up from cigarette store. I dropped cigarettes at 69 Erica Loop."

Debra Antico's working relationship with Robert Schmidt is further evidenced by the fact that Schmidt is the subscriber on each of the five cell phones that Debra Antico carries.

Debra Antico stated following her arrest that she has met with Cigarettes Unlimited owner John Lash III and that Lash is aware that the cigarettes she purchases are transported to New York City for re-sale.

b. Defendant Joseph Antico, residing at 60A Selvin Loop, Staten Island, NY 10303, buys Virginia-stamped cigarettes from CU-Dale City and transports the cigarettes to 69 Ericka Loop or 69 Stepney St., Staten Island, where the cigarettes are held for re-sale. Examples of cigarette trafficking to New York by Joseph Antico include but are not limited to:

   i. On or about April 16, 2019, Joseph Antico purchased approximately 49 cartons of cigarettes from CU-Dale City and transported the cigarettes back to New York City.

   ii. In or around May 22, 2019, Debra and Joseph Antico purchased approximately 400 cartons of cigarettes from CU-Dale City and loaded them into Debra Antico's vehicle (NY JDB-4386) and transported the cigarettes to Staten Island where some of the cigarettes were unloaded at 69 Ericka Loop. Joseph Antico was then arrested and charged with possession of 83.8 cartons of Virginia-stamped cigarettes.

c. Defendant Thomas Guglielmo, residing at 69 Ericka Loop, Staten Island, NY 10312, buys Virginia-stamped cigarettes from CU-Dale City and the cigarettes are transported for him by Debra and Joseph Antico to a garage adjacent to his residence at 69 Ericka Loop, Staten Island, where the cigarettes are held for re-sale. Thomas Guglielmo was a defendant in a prior cigarette trafficking case, *City of New York v. Chavez*, Civil Action No. 11-2691 (KBF) (S.D.N.Y. 2011) and is the subject of a consent order permanently enjoining him from engaging in cigarette trafficking. Examples of cigarette trafficking to New York in which Thomas Guglielmo participated include but are not limited to:

   i. On or about May 22, 2019 Thomas Guglielmo consented to a search of his garage, where 341 cartons of Virginia-stamped cigarettes which had been placed there by Debra and Joseph Antico were found, along with a quantity of black plastic bags.

d.  Defendant Meryle McGowan, 276 Marlborough Road, Brooklyn, NY 11226, buys Virginia-stamped cigarettes from CU-Dale City and transports the cigarettes to her residence in Brooklyn, where the cigarettes are held for re-sale.  Meryle McGowan resides at the same location as William R. McGowan, Jr., 276 Marlborough Road, Brooklyn, NY 11226, who was a defendant in a prior cigarette trafficking case, *City of New York v. Chavez*, Civil Action No. 11-2691 (KBF) (S.D.N.Y. 2011) and who is the subject of a consent order permanently enjoining him from engaging in cigarette trafficking. Examples of cigarette trafficking to New York by Meryle McGowan include but are not limited to:

   i.  On or about April 16, 2019, Meryle McGowan purchased from CU-Dale City approximately 722 cartons of cigarettes and transported the cigarettes to New York City.

   ii.  On or about May 1, 2019 Meryle McGowan arrived at CU-Dale City and purchased approximately 700 cartons of cigarettes which were loaded into her vehicle contained within 25 black plastic bags. Meryle McGowan drove the cigarettes to her residence at 276 Marlborough Road, Brooklyn, NY 11226.

e.  Defendant Robert Schmidt, 324 Isabela Ave, Staten Island, NY 10306, buys Virginia stamped cigarettes from one of the Cigarettes Unlimited stores and transports the cigarettes to Staten Island, where the cigarettes are held for re-sale. Schmidt has been transporting cigarettes from Cigarettes Unlimited to New York City on a weekly basis for approximately two and one-half years.  Examples of cigarette trafficking to New York by Robert Schmidt include but are not limited to:

   i.  On or about April 15, 2019 Robert Schmidt arrived at CU-Dale City and purchased approximately 575 cartons of cigarettes which were loaded into his vehicle and transported by him to Staten Island.

   ii.  On or about April 19, 2019 Robert Schmidt arrived at CU-Dale City and purchased approximately 771 cartons of cigarettes which were loaded into his vehicle and transported by him to Staten Island.

iii.  On or about April 24, 2019 Robert Schmidt arrived at CU-Dale City and purchased approximately 679 cartons of cigarettes which were loaded into his vehicle and transported by him to Staten Island.

iv.  On or about April 26, 2019 Robert Schmidt arrived at CU-Dale City and purchased approximately 750 cartons of cigarettes which were loaded into his vehicle and transported by him to Staten Island.

v.  On or about May 1, 2019 Robert Schmidt arrived at CU-Dale City and purchased approximately 740 cartons of cigarettes which were loaded into his vehicle (NY plate HAY-8217) and transported by him to Staten Island.

vi.  On or about May 28, 2019, Robert Schmidt arrived at CU-Dale City and purchased approximately 1200 cartons (20 cases) which were loaded into his vehicle (NY JHU-2118) and transported to by him New York City.

vii.  On or about June 4, 2019, Robert Schmidt arrived at CU-Dale City and purchased approximately 450 cartons (15 cases) of cigarettes which were loaded into his vehicle (NY JHU-2118) and transported by him to New York City.

viii.  On or about June 11, 2019, Robert Schmidt arrived at CU-Dale City and purchased approximately 45 cases of cigarettes which were loaded into his vehicle (NY JHU-2118) and transported by him to Staten Island where he was found to posses 45 cases of Virginia-stamped cigarettes and arrested for possession of unstamped cigarettes. Upon his arrest Schmidt stated that he has purchased all of his cigarettes at Cigarettes Unlimited, that he has met with owner John Lash III, and that Lash knows that the cigarettes are being transported to New York for re-sale.

f.  Defendant Razik Sharki, 67 Indale Ave, Staten Island, NY 10309, buys Virginia stamped cigarettes from CU-Dale City and transports the cigarettes to Staten Island, where the cigarettes where the cigarettes are held for re-sale. Examples of cigarette trafficking to New York by Razik Sharki include but are not limited to:

      i.  On or about April 4, 2019, Razik Sharki purchased approximately 180 cartons of cigarettes arrived at CU-Dale City and transported the cigarettes to Staten Island.

62.    Cigarettes Unlimited maintains separate spreadsheets for its Trafficker customers on which it records its sales to them. Analyses taken from incomplete sets of such spreadsheets indicate that the Cigarettes Unlimited Defendants sell the Traffickers approximately $1.3 million worth of cigarettes every thirty (30) days, or approximately 15,000 cartons every thirty (30) days.

63.    Assuming that rate remained constant for the ten years in which Cigarettes Unlimited has been engaged in cigarette trafficking, the City sustained approximately $27 million in damages.

## THE DEFENDANTS' KNOWLEDGE

64.    IRS Form 8300, Report of Cash Payments Over $10,000 Received in a Trade or Business, requires reporting to IRS of transactions in which a business receives more than $10,000 in cash from one buyer as a result of a single transaction or two or more related transactions.

65.    Despite receiving dozens of cash payments from a single buyer in excess of $10,000 in connection with a single transaction, namely from the Traffickers, the Cigarettes Unlimited Defendants rarely or never file Form 8300s.  The Cigarettes Unlimited Defendants fail to file Form 8300 because they know that to do so would expose the large sales of Virginia-stamped cigarettes made to the Traffickers.  The Cigarettes Unlimited Defendants concealment of large cash sales is evidence of their knowledge that the transactions are illegal.

66.    Certain Cigarettes Unlimited Defendants load cases of cigarettes purchased by the Traffickers into the Traffickers' vehicles, for those Cigarettes Unlimited Defendants receive

payments of $500 over and above their salaries. Employee "tips" of this size are evidence that that the Cigarettes Unlimited Defendants recognize that in assisting the loading of New York-plated vehicles with large quantities of cigarettes they face legal action.

67.     The Cigarettes Unlimited Defendants' knowledge of a scheme to traffic cigarettes into New York City is evidenced in an undated memorandum written after the arrest of Robert Schmidt by defendant Paula K. Sloan, an employee of the CU-Dale City location, to "Julius," believed to be Defendant Julius Peters-Brandon:

> Rob [believed to be defendant Robert Schmidt] was arrested Tuesday night after being here. Mary said "they" followed him and got him up north. He left $4,000 that no one realized until after shift change. We never got to tell him. Its [*sic*] in an envelope in the safe because we didn't know what else to do with it.  . . . .
>
> Before finding all of that out Rob wanted mom to ask John if he knew anything about Virginia State Troopers following people back to New York because that is what Debbie is claiming happened. Then Mary said "They" followed Rob.  John thinks that's bullshit and Debby probably turned Rob in.  But after thinking about it John called back and said we need to cool it down and NOT have any buyers this week or next week and to cancel there [*sic*] orders.  I cancelled the ones I put in today.  Mary knows because she called after that and mom told Joe already. So you still need to call Meryle and Lee because they had orders put in for next week.

68.     An undated Post-It note in handwriting resembling that of defendant Paula K. Sloan states: "Rob arrested[.] Mary wants to know if there is another day she can come. <u>No Buyers</u> [*sic*] this week

69.     A second note, in the same handwriting, states "Rob wants us to ask John if he has ever heard of a Virginia State Trooper following someone to New York. this is what Debbie claims happened."  Three names appeared on the Post-It note: Lee, Meryle, Mary.

<u>**ALLEGATIONS RELATED TO THE CCTA**</u>

70.     The CCTA makes it a felony punishable by up to five years' imprisonment for any person, with exceptions not relevant here, to ship, transport, receive, possess, sell, distribute or purchase "contraband cigarettes," defined as more than 10,000 cigarettes that bear no evidence of the payment of applicable cigarette taxes to the State or locality in which the cigarettes are found, if that jurisdiction requires stamps to be placed on packages or other containers of cigarettes to evidence tax payments. 18 U.S.C. §§ 2341(2); 2342.

71.     The CCTA, 18 U.S.C. §§ 2341-2346, was enacted to assist state and local governments in enforcing their tobacco laws ands accordingly provides for civil enforcement actions by state and local governments. 18 U.S.C. § 2346.

72.     New York City and State each impose an excise tax on cigarettes possessed for sale or use in the City and State.  The two jurisdictions require the use of a joint City-State tax stamp to evidence the payment of cigarette taxes. N.Y. Tax L. §§ 471, 471-a; Ad. Code § 11-1302.

73.     None of the cigarettes shipped, transported, received, possessed, sold, distributed or purchased by the Cigarettes Unlimited Defendants or the Traffickers were affixed with the joint New York State/New York City tax stamp.  Nor could they have been; only licensed New York "stamping agents" are permitted to affix tax stamps. None of the cigarettes shipped, transported, and distributed in or into New York by the Cigarettes Unlimited Defendants or the Traffickers were delivered to a New Yok-licensed stamping agent.

74.     The cigarettes shipped, transported, received, possessed, sold, distributed or purchased by the Cigarettes Unlimited Defendants or the Traffickers are contraband cigarettes within the meaning of the CCTA because (i) there is a State and a City cigarette tax applicable to the cigarettes; (ii) New York State and City both require a stamp to be placed on packages of

cigarettes to evidence payment of cigarette taxes; (iii) the Cigarettes Unlimited Defendants and the Traffickers transported, sold, possessed and distributed more than 10,000 cigarettes found within the State and the City without tax stamps; and (iv) no Cigarettes Unlimited Defendant or Trafficker is a person entitled pursuant to 18 U.S.C. § 2341(2) to possess unstamped cigarettes.

75.     Each Cigarettes Unlimited Defendant and each Trafficker had actual knowledge that the cigarettes that they shipped, transported, received, possessed, sold, distributed or purchased, which far exceeded 10,000 cigarettes, were transported to New York City and State for sale and distribution without tax stamps affixed and without payment of applicable cigarette taxes.

## ALLEGATIONS RELATED TO RICO

76.     Each Cigarettes Unlimited Defendant[8] and each Trafficker[9] is a member of or is associated with an association-in-fact enterprise referred to herein as the "Cigarettes Unlimited Enterprise." The Cigarettes Unlimited Enterprise engages in the shipment, transport, receipt, possession, sale, distribution or purchase of contraband cigarettes by purchasing Virginia-taxed cigarettes in Virginia, and distributing them in Kings County and Richmond County, New York, and elsewhere, generating millions of dollars in illicit profits by evading New York's mandatory cigarette distribution system.

77.     At all times relevant to this complaint, the Cigarettes Unlimited Enterprise has been an "enterprise" within the meaning of 18 U.S.C. § 1961(4).  The Cigarettes Unlimited Enterprise engages in, and its activities affect, interstate commerce. The Cigarettes Unlimited

---

[8]Specifically, John A. Lash, III, Anita Lash, Stephen D. Riley, Shana L. Biller, Mary Riley, Margaret Clark, Candice S. Fox, Monique Pearson, Julius Peters-Brandon, Joanna Petties, Paula K. Sloan, Derrick L. Whiting, Jessica Whitehead, Beth Wyndham and John or Jane Does 1-15 are each a member or associate of the Cigarettes Unlimited Enterprise.

[9] Specifically, Debra A. Antico, Joseph N. Antico, Thomas Guglielmo, Meryle McGowan, Robert A. Schmidt, Razik K. Sharki and John or Jane Does 16-30 are each a member or associate of the Cigarettes Unlimited Enterprise.

Enterprise constitutes an ongoing organization whose employees and members function as a continuing unit for the common purpose of achieving the objectives of the Enterprise, which included earning money by distributing Virginia-stamped cigarettes in New York.

78.     Each Cigarettes Unlimited Defendant participates in the affairs of the Cigarettes Unlimited Enterprise by selling tax-paid Virginia cigarettes to the Traffickers with the knowledge that the Traffickers intend to and do in fact transport the cigarettes into New York City for distribution and sale in the City. Each Cigarettes Unlimited Defendant participates in the affairs of the Cigarettes Unlimited Enterprise by using the three Cigarettes Unlimited stores as "fronts," in which apparent Virginia retail cigarette outlets in fact are operate as locations for cigarette sales to the Traffickers.

79.     Each Trafficker participates in the affairs of the Cigarettes Unlimited Enterprise by buying tax-paid Virginia cigarettes from the Cigarettes Unlimited Defendants, intending to and in fact transporting those cigarettes into New York City for distribution and sale in the City.

80.      Each Trafficker participates in the operation of the Cigarettes Unlimited Enterprise by receiving cigarette orders from buyers in New York, placing orders with Cigarettes Unlimited, and then transporting cigarettes from Cigarettes Unlimited by motor vehicle to New York into New York City for distribution and sale in the City.

81.     The RICO statute, 18 U.S.C. § 1961 *et seq.*, makes it unlawful for any person employed by or associated with any enterprise engaged in or affecting interstate commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

82.     "Racketeering activity" includes any act indictable under 18 U.S.C. § 2341 *et seq.*, *i.e.*, trafficking in contraband cigarettes in violation of the CCTA.  *See* 18 U.S.C. § 1961(1).

A CCTA violation is a RICO "predicate offense." Violation of the CCTA constitutes "racketeering activity" within the meaning of the RICO statute.

### The Purposes, Methods and Means of the Enterprise

83.     The principal purpose of the Cigarettes Unlimited Enterprise is to generate money for its members by engaging in the shipment, transport, receipt, possession, sale, distribution or purchase of contraband cigarettes. The Cigarettes Unlimited Defendants and the Traffickers, as members or associates of the Cigarettes Unlimited Enterprise, sought to and did participate in achieving the purpose of the Enterprise through various legal and illegal activities.

84.     The Cigarettes Unlimited Defendants receive orders for cigarettes from the Traffickers and fill those orders knowing that the cigarettes sold to the Traffickers were not affixed with joint New York State/New York City tax stamps and would be immediately transported to New York. The Cigarettes Unlimited Defendants took all necessary steps to permit the Enterprise to succeed in earning money through the distribution of contraband cigarettes.

85.     At all times relevant to this complaint, the Cigarettes Unlimited Defendants and the Traffickers participated in the conduct of the affairs of the Cigarettes Unlimited Enterprise by shipping, transporting, receiving, possessing, selling, distributing or purchasing contraband cigarettes in or into New York City and State, or arranging therefor.

86.     At all times relevant to this complaint, the Cigarettes Unlimited Defendants and the Traffickers conducted the affairs of the Cigarettes Unlimited Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B), consisting principally of multiple and continuing instances of contraband cigarette trafficking in violation of 18 U.S.C. § 2341 *et seq.*

**Racketeering Acts**

87.     At all times relevant to this complaint, the Cigarettes Unlimited Defendants and the Traffickers knowingly and intentionally shipped, transported, received, possessed, sold, distributed or purchased contraband cigarettes namely, more than 10,000 cigarettes lacking joint New York State/New York City tax stamps, in violation of the CCTA, 18 U.S.C. § 2341 *et seq.* Each transaction or aggregate of transactions involving 10,000 cigarettes constitutes a separate violation of the CCTA and hence an act of racketeering as defined by the RICO statute. The Cigarettes Unlimited Defendants and the Traffickers committed more than two racketeering acts during the ten years preceding the filing of this complaint.

88.     The foregoing racketeering acts constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961, in that they consist of two or more acts of racketeering activity having a common purpose within a ten-year period.

**Role of The Cigarettes Unlimited Defendants**

89.     At all times relevant to this complaint, the Cigarettes Unlimited Defendants participated in the management and operation of the Cigarettes Unlimited Enterprise by, among other things:

   a.  Engaging in the long-term planning and day-to-day activities required to sell, ship and distribute contraband cigarettes;

   b.  Arranging for the sale, shipment, transport and distribution of contraband cigarettes into New York City;

   c.  Selling Virginia-taxed cigarettes to persons whom the Cigarettes Unlimited Defendants knew and intended transported the cigarettes to New York City and State for sale and distribution;

   d.  Receiving orders for Virginia-taxed cigarettes from the Traffickers, and arranging for the cigarettes to be sold to the Traffickers with the knowledge that the cigarettes would be  transported to New York for distribution and sale;

e. Employing and instructing other individuals to engage in all of the above activities.

90.     At all times relevant to this complaint, the Traffickers participated in the management and operation of the Cigarettes Unlimited Enterprise by, among other things:

a. Engaging in the long-term planning and day-to-day activities required to purchase, receive, transport, sell, and distribute contraband cigarettes;

b. Arranging for the sale, shipment, transport and distribution of contraband cigarettes from Virginia to New York City;

c. Possessing, distributing, and selling Virginia-taxed cigarettes to persons in New York City;

d. Receiving orders for Virginia-taxed cigarettes from New York residents, ordering the cigarettes for them, and arranging for the cigarettes to be delivered to them;

e. Employing and instructing other individuals to engage in all of the above activities.

## ALLEGATIONS RELATED TO CONSPIRACY TO VIOLATE RICO

91.     At all times relevant to this complaint, the Cigarettes Unlimited Defendants and the Traffickers conspired among themselves to violate the provisions of 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d), by agreeing to further endeavors of the Cigarettes Unlimited Enterprise that, when completed, constituted contraband cigarette trafficking, in violation of the CCTA, 18 U.S.C. § 2341 *et seq.*

92.     At all times relevant to this complaint, the Cigarettes Unlimited Defendants and the Traffickers agreed to a plan whereby the Cigarettes Unlimited stores would operate as a retail tobacco outlet in Virginia, obtain large quantities of Virginia-taxed cigarettes, and sell the cigarettes to the Traffickers, whom the Cigarettes Unlimited Defendants knew and intended

would transport the cigarettes to New York City for re-sale, without affixing New York State or City tax stamps.

93.     At all times relevant to this complaint, the Traffickers and the Cigarettes Unlimited Defendants agreed to a plan whereby the Traffickers would obtain large quantities of Virginia-taxed cigarettes from the Cigarettes Unlimited Defendants and sell the cigarettes in New York City without New York State or City tax stamps.

94.     The Cigarettes Unlimited Defendants and the Traffickers each recognized that an essential element of the plan consisted of multiple violations of the CCTA, 18 U.S.C. § 2341 *et seq*. The Cigarettes Unlimited Defendants and the Traffickers agreed that certain members of the Cigarettes Unlimited Enterprise would commit CCTA violations while other Enterprise members would engage in conduct intended to support and facilitate those violations of the CCTA.

95.     At all times relevant to this complaint, the Cigarettes Unlimited Defendants and the Traffickers formed the Cigarettes Unlimited Enterprise, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, and then knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Cigarettes Unlimited Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1), (5).

96.     The pattern of racketeering activity through which the Cigarettes Unlimited Defendants and the Traffickers agreed to conduct the affairs of the Cigarettes Unlimited Enterprise consisted of acts of contraband cigarette trafficking into New York City. The Cigarettes Unlimited Defendants and the Traffickers each agreed that some conspirators would commit at least two acts of racketeering in conducting the affairs of the Cigarettes Unlimited Enterprise and other conspirators would assist in those acts.

- 27 -

## ALLEGATIONS RELATED TO THE PACT ACT
### (Cigarettes Unlimited Defendants)

97.     Pursuant to the PACT Act, 15 U.S.C. § 375(4), a "consumer" is any person that purchases cigarettes or smokeless tobacco, but not including any person lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco. 5 U.S.C. § 375

98.     Pursuant to the PACT Act, 15 U.S.C. § 375(5), a "delivery sale" is any sale of cigarettes to a "consumer" in which the seller is not in the physical presence of the consumer when the order is placed, or the seller is not in the physical presence of the consumer when the consumer obtains possession of the cigarettes, or the cigarettes are delivered to the consumer by any method of remote delivery, such as common carrier. *See* 15 U.S.C. § 375(5).

99.     The Cigarettes Unlimited Defendants' sales of cigarettes to the Traffickers were delivery sales to "consumers" within the meaning of the PACT Act, 15 U.S.C. § 375(4), because the Traffickers, the purchasers of the cigarettes, were not licensed by New York State or City to deal in tobacco products and were therefore not "lawfully-operating cigarette manufacturers, distributors, wholesalers or retailers."

100.    The Cigarettes Unlimited Defendants' sales of cigarettes to the Traffickers' were "delivery sales" within the meaning of the PACT Act, 15 U.S.C. § 375(5), because the Cigarettes Unlimited Defendants and the Traffickers were not in one another's physical presence when the orders were placed by telephone. *See* 15 U.S.C. § 375(5).

101.    A "delivery seller" is a person who makes a delivery sale. 15 U.S.C. § 375(6). The Cigarettes Unlimited Defendants are "delivery sellers" because they engaged in remote transactions with cigarettes.

102.   The delivery sales by the Cigarettes Unlimited Defendants were made in interstate commerce within the meaning of the PACT Act, because the orders were placed by telephone and/or the cigarettes were sent from Virginia to New York. *See* 15 U.S.C. §§ 375.

103.   Under the PACT Act, any person that sells, transfers, or ships for profit cigarettes in interstate commerce into New York State in a delivery sale must file with the New York State Department of Taxation and Finance specified information identifying the seller and must also file, not later than the 10th day of each calendar month, a memorandum containing specified information concerning each and every shipment of cigarettes made during the previous calendar month into New York State. Such persons must also file copies of the memorandum concerning any and all cigarette shipments into New York State with the New York City Department of Finance and the Corporation Counsel of the City of New York.  *See* 15 U.S.C. § 376.

104.   In addition to the above reporting requirements, the PACT Act requires that any delivery seller making a delivery sale into New York City and/or State:

a.   Comply with all laws governing the sale of cigarettes in New York City and/or State. 15 U.S.C. § 376a(a)(3);

b.   Make certain that all applicable cigarette taxes have been paid to each jurisdiction and that the required tax stamps have been affixed before the delivery sale is made. 15 U.S.C. §§ 376a(a)(4), (d);

c.   Assure that the weight of cigarettes sold, delivered, or caused to be delivered in a single sale or delivery does not exceed ten pounds. 15 U.S.C. §§ 376a (a), (b)(3);

d.   Place specified notices on the outside of the packages involved in the delivery sale. 15 U.S.C. §§ 376a (a), (b)(1), (2); and

e.   Deliver the cigarettes by a method that requires the person to whom the delivery is made to provide age verification to the delivery service.  15 U.S.C. §§ 376a (a), 376a (b)(4).

105.    None of the delivery sales made by the Cigarettes Unlimited Defendants to the Traffickers were reported to New York State or to the New York City Department of Finance or to the Office of the Corporation Counsel of the City of New York in a memorandum describing the particulars of the sales.

106.    None of the delivery sales made by the Cigarettes Unlimited Defendants were of cigarettes on which taxes had been paid or to which tax stamps had been affixed.

107.    New York State and City requires persons who sell cigarettes in New York to obtain a license.   None of the Cigarettes Unlimited Defendants and/or the Traffickers are licensed to sell cigarettes in New York.

108.    Neither the Cigarettes Unlimited Defendants nor the Traffickers used a method of delivery that required the age of the buyer to be verified upon delivery.

**ALLEGATIONS RELATED TO VIOLATION OF N.Y. PHL § 1399-ll**
**(Traffickers)**

109.    N.Y. PHL § 1399-ll(1) provides that, in New York State, cigarettes may be shipped only to (a) licensed cigarette tax agents, licensed wholesale dealers, or registered retail dealers, (b) export warehouse proprietors or customs bonded warehouse operators, or (c) agents of the federal or state government.

110.    None of the Traffickers delivered cigarettes to (a) a licensed cigarette tax agent, licensed wholesale dealer, or registered retail dealer, (b) an export warehouse proprietor or customs bonded warehouse operator, or (c) an agent of the federal or state government.

111.    The Traffickers knowingly transporting thousands of cartons of cigarettes to persons that the Traffickers knew were not (a) licensed cigarette tax agents, licensed wholesale dealers, or registered retail dealers, (b) export warehouse proprietors or customs bonded warehouse operators, or (c) agents of the federal or state government.

112.    By knowingly transporting cigarettes to persons in New York City other than those designated as the permissible recipients of cigarette deliveries set forth in N.Y. PHL § 1399-ll, the Traffickers violated N.Y. PHL § 1399-ll.

## FIRST CLAIM FOR RELIEF

### (All Defendants - Violation of the Contraband Cigarette Trafficking Act

113.    The City realleges paragraphs 1-112 above as if fully set forth herein.

114.    Pursuant to the CCTA, 18 U.S.C. § 2346, the City, as a local government, is empowered to bring an action in federal district court to prevent and restrain violations of the CCTA, and to obtain any other appropriate forms of relief from CCTA violations, including civil penalties, equitable remedies, and damages.

115.    At all times relevant to this complaint, each of the Cigarettes Unlimited Defendants and each Trafficker knowingly shipped, transported, sold and/or distributed contraband cigarettes within the meaning of 18 U.S.C. § 2341(2), in that the Cigarettes Unlimited Defendants and the Traffickers each engaged in such activities with more than 10,000 cigarettes that bore neither the New York State tax stamp nor the joint New York State/New York City tax stamp and were possessed by, shipped, transported, sold and distributed to persons located in New York City.

116.    As a direct result of the foregoing violations of the CCTA by the Cigarettes Unlimited Defendants and the Traffickers, the City has suffered and continues to suffer damages.

117.    The Cigarettes Unlimited Defendants and the Traffickers will continue to violate the CCTA unless enjoined.

## SECOND CLAIM FOR RELIEF

### (All Defendants-Violation of 18 U.S.C. § 1962(c))

118.    The City realleges paragraphs 1-117 as if fully set forth herein.

119.    New York City is a "person" as defined in 18 U.S.C. § 1961(3).

120.    The Cigarettes Unlimited Defendants and the Traffickers are each a "person" as defined in 18 U.S.C. § 1961(3) and as used in 18 U.S.C. § 1962(c).

121.    The Cigarettes Unlimited Enterprise is an "enterprise" as defined in 18 U.S.C. § 1961(4) and as used in 18 U.S.C. §§ 1962(c).  The Cigarettes Unlimited Enterprise engages in activities affecting interstate commerce and has done so at all times relevant to the complaint.

122.    Each Cigarettes Unlimited Defendant and each Trafficker is a member or is associated with the Cigarettes Unlimited Enterprise. Each Cigarettes Unlimited Defendant and each Trafficker conducts or participates in the management and operation of the affairs of the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B), 1961(5) and 1962(c), namely, multiple and repeated acts of contraband cigarette trafficking, in violation of 18 U.S.C. §§ 2341 *et seq.*

123.    The acts of contraband cigarette trafficking engaged in by the Cigarettes Unlimited Defendants and Traffickers constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), because the acts are related to one another and are continuous. The acts are connected to one another as part of a plan to accomplish a uniform purpose, which is the making of money from the receipt, sale, possession, and distribution of contraband cigarettes.  The repeated nature of the conduct and the threat of similar conduct occurring in the future make the acts continuous.

124.    New York City has suffered injury to its business or property within the meaning of 18 U.S.C. § 1964(c) by reason of the violation of 18 U.S.C. § 1962(c) by the Cigarettes Unlimited Defendants and the Traffickers.

## THIRD CLAIM FOR RELIEF

### (All Defendants-Violation of 18 U.S.C. § 1962(d))

125.    The City realleges paragraphs 1-124 as if fully set forth herein.

126.    New York City is a "person" as defined in 18 U.S.C. § 1961(3).

127.    Each one of the Cigarettes Unlimited Defendants and each Trafficker is a "person" as defined in 18 U.S.C. § 1961(3) and as used in 18 U.S.C. § 1962(d).

128.    The Cigarettes Unlimited Enterprise is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). The Cigarettes Unlimited Enterprise engages in and its activities have an effect on interstate commerce.

129.    The Cigarettes Unlimited Defendants and the Traffickers conspired with one another to violate 18 U.S.C. § 1962(c) in that these defendants agreed among themselves to conduct the affairs of the Cigarettes Unlimited Enterprise through acts that, when completed, would satisfy all of the elements of a predicate offense, to wit, contraband cigarette trafficking, in violation of the CCTA, 18 U.S.C. §§ 2341 *et seq.*

130.    With knowledge that the Cigarettes Unlimited Enterprise engaged in multiple and repeated acts of contraband cigarette trafficking in violation of the CCTA, 18 U.S.C. §§ 2341, *et seq.*, the Cigarettes Unlimited Defendants and the Traffickers each agreed among themselves that the affairs of the Cigarettes Unlimited Enterprise would be conducted in a manner that would facilitate cigarette trafficking and lead to the success of the scheme to traffic contraband cigarettes into New York City.

131.    The scheme to traffic contraband cigarettes into New York City constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).  The predicate acts are both related and continuous.  The acts are connected to one another as part of a scheme to accomplish a uniform purpose, which is the profiting from the sale of contraband cigarettes in

New York City.  The repeated nature of the conduct during the period of the scheme and the threat of similar conduct occurring in the future make the acts continuous.

132.    New York City has suffered injury to its business or property within the meaning of 18 U.S.C. § 1964(c) by reason of the Cigarettes Unlimited Defendants' and the Traffickers' violation of 18 U.S.C. § 1962(d).

### FOURTH CLAIM FOR RELIEF

**(Cigarettes Unlimited Defendants-Violation of the PACT Act)**

133.    The City repeats and realleges paragraphs 1-112 as if fully set forth herein.

134.    Pursuant to the PACT Act, 15 U.S.C. § 378, the City, as a local government, is empowered to bring an action in federal district court to prevent and restrain violations of the PACT Act and to obtain any other appropriate forms of relief from such violations, including civil penalties, disgorgement and damages.

135.    The Cigarettes Unlimited Defendants are each "delivery sellers" within the meaning of the PACT Act, 15 U.S.C. § 375(6).

136.    The persons to whom the Cigarettes Unlimited Defendants sell cigarettes are "consumers" within the meaning of the PACT Act, 15 U.S.C. § 375(4).

137.    As to the deliveries of cigarettes by the Cigarettes Unlimited Defendants,  (i) none of the sales were reported to New York City in a memorandum describing the particulars of the sales pursuant to 15 U.S.C. § 376; (ii) the Cigarettes Unlimited Defendants did not comply with any of the requirements for making delivery-sales, pursuant to 15 U.S.C. § 376a, including but not limited to 15 U.S.C. § 376a(a)(3) and (4) requiring compliance with New York tax and licensing laws.

138.    Unless enjoined, the Cigarettes Unlimited Defendants and the Traffickers will continue to make delivery-sales to consumers without complying with the PACT Act.

139.    As a direct result of the Cigarettes Unlimited Defendants' violation of the PACT Act, the City has suffered and continues to suffer damages.

### FIFTH CLAIM FOR RELIEF

### (Traffickers-Violation of N.Y. Pub. Hlth. L. § 1399-*ll*)

140.    The City repeats and realleges paragraphs 1-112 as if fully set forth herein.

141.    The Traffickers knowingly selling and transporting thousands of cartons of cigarettes to persons in New York City that the Traffickers knew were not (a) licensed cigarette tax agents, licensed wholesale dealers, or registered retail dealers; or (b) export warehouse proprietors or customs bonded warehouse operators; or (c) agents of the federal or state government.

142.    By knowingly selling and/or transporting cigarettes to persons in New York City other than those designated as permissible recipients of cigarette deliveries by N.Y. PHL § 1399-ll, the Traffickers violated N.Y. PHL § 1399-ll, and are accordingly liable to the City for the $100 per pack penalty imposed by that section.

**WHEREFORE**, New York City respectfully prays that the Court grant judgment against defendants as follows:

a.    On the First Claim For Relief, requiring the Cigarettes Unlimited Defendants and the Traffickers jointly and severally (i) to pay the City money damages in an amount equal to the amount of the City tax imposed on the cigarettes distributed into the City by the Cigarettes Unlimited Defendants and/or each Trafficker in violation of the CCTA, 18 U.S.C. § 2341 *et seq.* and (ii) to pay the City civil penalties available under the CCTA and (iii) permanently enjoining the Cigarettes Unlimited Defendants and the Traffickers from violating the CCTA, 18 U.S.C. § 2341 *et seq.* by shipping, transporting, receiving, possessing, selling, distributing or purchasing contraband cigarettes in or into New York;

b.    On the Second Claim For Relief, pursuant to the RICO statute, 18 U.S.C. § 1962(c) *et seq.*, requiring the Cigarettes Unlimited Defendants and the

Traffickers, jointly and severally, to pay the City money damages in an amount equal to three times the amount of the City tax imposed on the cigarettes distributed into the City by the Cigarettes Unlimited Defendants and the Traffickers in violation of RICO, and attorney's fees;

c. On the Third Claim For Relief, pursuant to the RICO statute, 18 U.S.C. § 1962(d), requiring the Cigarettes Unlimited Defendants and the Traffickers, jointly and severally, to pay the City money damages in an amount equal to three times the amount of the City tax imposed on the cigarettes distributed into the City by the Cigarettes Unlimited Defendants and the Traffickers for conspiring to violate RICO, and attorney's fees;

d. On the Fourth Claim For Relief, (i) requiring the Cigarettes Unlimited Defendants jointly and severally (i) to pay the City money damages equal to the amount of the City tax imposed on the cigarettes delivered into the City by the Cigarettes Unlimited Defendants in violation of the PACT Act, 15 U.S.C. § 375 *et seq.* and (ii) to pay the City the civil penalties provided for in the PACT Act, 15 U.S.C. § 377, specifically $5000 for the first violation and $10,000 for each violation thereafter; and (iii) permanently enjoining the Cigarettes Unlimited Defendants from violating the PACT Act, 15 U.S.C. § 375 *et seq.*

*e.* On the Fifth Claim For Relief, requiring the Traffickers to pay the City the $100 for each pack of cigarettes delivered into the City by the Traffickers in violation of N.Y. Pub. Hlth. L. § 1399-*ll*; and

f. Awarding such other and further relief as the Court may deem appropriate.

Dated: New York, New York
   July 11, 2019

     ZACHARY W. CARTER
     Corporation Counsel of the
      City of New York
     Attorney for Plaintiff the City of New York
     100 Church Street, Room 20-99
     New York, New York 10007
     (212) 356-2032

     By: _____s/_____
        Eric Proshansky (EP 1777)
        Assistant Corporation Counsel

- 36 -