UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

THE CITY OF NEW YORK,

                              Plaintiff,                      Civil Action No. 19-cv-3998

                        -against-

CIGARETTES UNLIMITED, L.C., JOHN A. LASH, III,
ANITA LASH, STEPHEN DABNEY RILEY, SHANA L.
BILLER, MARY RILEY, MARGARET L. CLARK,
CANDICE S. FOX, MONIQUE PEARSON, JULIUS
PETERS-BRANDON, JOANNA S. PETTIES, PAULA K.
SLOAN, DERRICK L. WHITING, JESSICA
WHITEHEAD, ELIZABETH R. WINDHAM, DEBRA A.
ANTICO, JOSEPH N. ANTICO, THOMAS
GUGLIELMO, MERYLE MCGOWAN, ROBERT A.
SCHMIDT, RAZIK K. SHARKI, and John or Jane Doe 1-
30,

                              Defendants.

---------------------------------------------------------------------- x

**MEMORANDUM OF LAW OF PLAINTIFF THE CITY OF NEW YORK IN
OPPOSITION TO THE CIGARETTES UNLIMITED DEFENDANTS' MOTION TO
DISMISS**

**JAMES E. JOHNSON**
Corporation Counsel of the
  City of New York
*Attorney for Plaintiff the City of New York*
100 Church Street, Room 20-99
New York, New York 10007
(212) 356-2032

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. iii

PRELIMINARY STATEMENT ........................................................................ 1

LEGAL STANDARDS ..................................................................................... 4

SUMMARY OF FACTS .................................................................................... 6

       1.   Complaint............................................................................ 6

       2.   Declaration of John S. Cielakie ....................................... 7

       3.   Interview of Cigarettes Unlimited Owner
           John Lash ............................................................................ 7

       4.   Interview of Cigarettes Unlimited Owner
           Stephen Riley ...................................................................... 7

       5.   Declaration of Joseph Antico, Jr. ..................................... 8

       6.   Declaration of Debra Antico ............................................ 8

       7.   Declaration of Mary Davern ............................................ 8

       8.   Declaration of Meryle McGowan ..................................... 9

       9.   The Trafficking Memorandum ......................................... 9

DEFINED TERMS ........................................................................................... 10

ARGUMENT

     POINT I

         THE COURT HAS PERSONAL JURISDICTION
         OVER CIGARETTES UNLIMITED, L.C. AND
         EVERY "CIGARETTES UNLIMITED
         DEFENDANT" DEFINED IN THE COMPLAINT ............................... 11

          1.   The Complaint ....................................................... 12

          2.   Lash/Riley Admissions ......................................... 13

          3.   Trafficker Declarations ......................................... 14

**Pages**

    4.   The Trafficker Memorandum .................................. 14

A.  The Court Has Long-Arm Jurisdiction Over All of the Cigarettes Unlimited Defendants Under C.P.L.R. § 302(a)(1) ................................................ 15

B.  The Court Has Agency Jurisdiction Over The Cigarettes Unlimited Defendants Under C.P.L.R. § 302(a)(1) ................................................ 17

C.  The Court Has Co-Conspirator Jurisdiction Under C.P.L.R. § 302(a)(2) .............................. 18

    (a)  Primary Tort ................................................ 19

    (b)  Existence of A Conspiracy ............................. 19

    (c)  Membership In the Conspiracy ...................... 19

    (d)  Tortious Act in New York ............................. 19

    (f)  "For the benefit of" or "on behalf of" ............... 20

D.  The Court Has Tortious Act Jurisdiction Under C.P.L.R. § 302(a)(3)(ii) ................................... 20

E.  The Exercise Of Personal Jurisdiction Comports With Due Process ............................. 22

F.  If Necessary, Jurisdictional Discovery Should Be Permitted ............................................... 23

POINT II

THE "ENDS OF JUSTICE," UNDER 18 U.S.C. §1965 PERMIT ASSERTION OF PERSONAL JURISDICTION OVER EVERY CIGARETTES UNLIMITED DEFENDANT ................................... 24

POINT III

THE COMPLAINT STATES A CCTA CLAIM ...................... 30

A.  The City Has Pleaded That The "Grouped Defendants" Violated the CCTA ...................... 36

**Pages**

B. The City Has Pleaded The "Other" Elements of
A CCTA Violation As To The "Grouped
Defendants" .................................................................. 38

C. The City Has Pleaded CCTA Violations
Against Peters-Brandon and Sloan ................................... 39

POINT IV

THE CITY STATES VALID RICO AND RICO
CONSPIRACY CLAIMS ........................................................ 39

POINT V

THE PACT ACT DEFINES DEFENDANTS
ANITA LASH, MARY RILEY, BILLER, CLARK,
FOX, PEARSON, PETERS-BRANDON,
PETTIES, SLOAN, WHITING, WHITEHEAD,
AND WINDHAM AS "DELIVERY SELLERS" .................................. 41

CONCLUSION.......................................................................... 42

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                    <u>Pages</u>

*Abramski v. United States,*
    134 S. Ct. 2259 (2014) ..................................................................................31

*Allstate Life Ins. Co. v. Linter Group, Ltd.,*
    782 F. Supp. 215 (S.D.N.Y. 1992) ........................................................19, 20

*American Trade Partners, L.P. v. A-1 Intern. Importing Enterprises, Ltd.,*
    755 F.Supp. 1292 (E.D.Pa.1990) ................................................................27

*AmTrust Fin. Servs. v. Lachhini,*
    260 F. Supp. 3d 316 (S.D.N.Y. 2017)........................................................22

*APWU v. Potter,*
    343 F.3d 619 (2d Cir. 2003)........................................................................23

*Attorney Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc.,*
    268 F.3d 103 (2d Cir. 2001)........................................................31, 32, 35

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.,*
    515 U.S. 687 (1995)....................................................................................35

*Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd.,*
    62 N.Y.2d 65 (1984) ..................................................................................23

*Baron Philippe de Rothschild, S.A. v. Paramount Distillers,*
    923 F. Supp. 433 (S.D.N.Y. 1996) ......................................................16, 17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................4, 38

*Best Van Lines, Inc. v. Walker,*
    490 F.3d 239 (2d Cir. 2007)........................................................................16

*Binghamton Masonic Temple, Inc. v. Bares,*
    96-6228, 1999 U.S. App. LEXIS 18139 (2d Cir. July 30, 1999) ...............5

*Capitol Records, LLC v. VideoEgg, Inc.,*
    611 F. Supp. 2d 349 (S.D.N.Y. 2009).......................................................21

*Caro v. Weintraub,*
    618 F.3d 94 (2d Cir. 2010)..........................................................................16

*Carr-Stock v. Orthotic Rehab. Prods., Inc.,*
    832 F. Supp. 2d 229 (W.D.N.Y. 2011) ......................................................17

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

*Abramski v. United States*,
   134 S. Ct. 2259 (2014).................................................................................................31

*Allstate Life Ins. Co. v. Linter Group, Ltd.*,
   782 F. Supp. 215 (S.D.N.Y. 1992) .....................................................................19, 20

*American Trade Partners, L.P. v. A-1 Intern. Importing Enterprises, Ltd.*,
   755 F.Supp. 1292 (E.D.Pa.1990) ............................................................................27

*AmTrust Fin. Servs. v. Lachhini*,
   260 F. Supp. 3d 316 (S.D.N.Y. 2017)......................................................................22

*APWU v. Potter*,
   343 F.3d 619 (2d Cir. 2003)....................................................................................23

*Attorney Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc.*,
   268 F.3d 103 (2d Cir. 2001)........................................................................31, 32, 35

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*,
   515 U.S. 687 (1995).................................................................................................35

*Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd.*,
   62 N.Y.2d 65 (1984) ...............................................................................................23

*Baron Philippe de Rothschild, S.A. v. Paramount Distillers*,
   923 F. Supp. 433 (S.D.N.Y. 1996) ....................................................................16, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................4, 38

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007)....................................................................................16

*Binghamton Masonic Temple, Inc. v. Bares*,
   96-6228, 1999 U.S. App. LEXIS 18139 (2d Cir. July 30, 1999) .............................5

*Capitol Records, LLC v. VideoEgg, Inc.*,
   611 F. Supp. 2d 349 (S.D.N.Y. 2009).....................................................................21

*Caro v. Weintraub*,
   618 F.3d 94 (2d Cir. 2010)......................................................................................16

*Carr-Stock v. Orthotic Rehab. Prods., Inc.*,
   832 F. Supp. 2d 229 (W.D.N.Y. 2011) ...................................................................17

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)...............................................................................4

*Chloe v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010)...............................................................15, 16, 17

*Chrysler Capital Corp. v. Century Power Corp.*,
  778 F. Supp. 1260 (S.D.N.Y. 1991)...................................................18, 19, 20

*City of Almaty v. Ablyazov*,
  278 F. Supp. 3d 776 (S.D.N.Y. 2017)..........................................................19, 23

*City of N.Y. v. Bello*,
  579 F. App'x 15 (2d Cir. 2014) ..........................................................................3

*City of N.Y. v. Chavez*,
  2012 U.S. Dist. LEXIS 42792 (S.D.N.Y. 2013)..............................31, 32, 34, 36

*City of N.Y. v. Chavez*,
  944 F. Supp. 2d 260 (S.D.N.Y. 2013)..............................3, 31, 32, 33, 36, 37, 40

*City of N.Y. v. Cyco.net, Inc.*,
  383 F. Supp. 2d 526 (S.D.N.Y. 2005)..........................5, 11, 18, 20, 27, 29

*City of N.Y. v. FedEx Ground Package Sys.*,
  91 F. Supp. 3d 512 (S.D.N.Y. 2015)...........................................................31, 40

*City of N.Y. v. Golden Feather Smoke Shop, Inc.*,
  2009 U.S. Dist. LEXIS 76306 (E.D.N.Y. Aug. 25, 2009).............................39

*City of N.Y. v. Golden Feather Smoke Shop, Inc.*,
  2013 U.S. Dist. LEXIS 47037 (E.D.N.Y. Mar. 29, 2013)...........................3, 31, 32

*City of N.Y. v. Hatu*,
  No. 18-CV-848, 2019 U.S. Dist. LEXIS 91576
  (S.D.N.Y. May 31, 2019)..........................................3, 5, 11, 22, 23, 29, 31, 32, 33, 36, 37, 40

*City of N.Y. v. Milhelm Attea & Bros.*,
  2012 U.S. Dist. LEXIS 116533 (E.D.N.Y. Aug. 17, 2012).......................3, 31, 32, 35, 36, 37

*City of N.Y. v. Smokes-Spirits.com, Inc.*,
  541 F.3d 425 (2d Cir. 2008),
  *rev'd on other gnds sub nom*,
  *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1 (2010) .............................................16

*City of N.Y. v. Wolfpack Tobacco*,
  2013 U.S. Dist. LEXIS 129103 (S.D.N.Y. Sep. 9, 2013).....................................31

v

*City of New York v. Gordon*,
155 F. Supp. 3d 411 (S.D.N.Y. 2015)...........................................................31, 40

*City of New York v. LaserShip, Inc.*,
33 F. Supp. 3d 303 (S.D.N.Y.2014).......................................................31, 40, 41

*Cory v. Aztec Steel Bldg., Inc.*,
468 F.3d 1226 (10th Cir. 2006) ....................................................................27

*Crab House of Douglaston, Inc. v. Newsday, Inc.*,
418 F. Supp. 2d 193 (E.D.N.Y. 2006) ..........................................................41

*Crenshaw v. Antokol*,
287 F. Supp. 2d 37 (D.D.C. 2003) ...............................................................28

*Darienzo v. Wise Shoe Stores, Inc.*,
74 A.D.2d 342 (2d Dep't. 1980) .....................................................................22

*DiRienzo v. Philip Servs. Corp.*,
294 F.3d 21 (2d Cir. 2002)..............................................................................29

*Dixon v. Mack*,
507 F. Supp. 345 (S.D.N.Y. 1980) .........................................................18, 19

*Eldred v. Comforce Corp.*,
No. 3:08-CV-1171 (LEK/DEP), 2010 U.S. Dist. LEXIS 18260
(N.D.N.Y. Mar. 2, 2010)...............................................................................25

*Elsevier Inc. v. W.H.P.R., Inc.*,
692 F. Supp. 2d 297 (S.D.N.Y. 2010)...........................................................26

*Emerald Asset Advisors v. Schaffer*,
895 F. Supp. 2d 418 (E.D.N.Y. 2012) .....................................................21, 24

*Energy Brands Inc. v. Spiritual Brands Inc.*,
571 F. Supp. 2d 458 (S.D.N.Y. 2008)........................................................5, 22

*EnviroCare Techs., LLC v. Simanovsky*,
2012 U.S. Dist. LEXIS 78088 (E.D.N.Y. June 4, 2012) ..........................16, 17

*Fernando v. Fernando*,
No. 09-CV-1390 (KAM) (SMG), 2010 U.S. Dist. LEXIS 79254
(E.D.N.Y. Aug. 5, 2010)................................................................................25

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004)...........................................................................41

*Fisher v. Hopkins*,
No. 02-7077, 2003 U.S. Dist. LEXIS 307 (S.D.N.Y. Jan. 9, 2003) .......................................27

*FTC v. Cephalon, Inc.*,
551 F. Supp. 2d 21 (D.D.C. 2008) ......................................................................................30

*Gansas v. City of N.Y.*,
No. 05-CV-5484, 2006 U.S. Dist. LEXIS 52419
(E.D.N.Y. July 28, 2006) (Glasser, J.) ..............................................................................4

*Grand v. Schwarz*,
2016 U.S. Dist. LEXIS 61606 (S.D.N.Y. May 10, 2016).........................................................5

*Gross v. Waywell*,
628 F. Supp. 2d 475 (S.D.N.Y. 2009)................................................................................41

*Gucci Am., Inc. v. Frontline Processing Corp.*,
721 F. Supp. 2d 228 (S.D.N.Y. 2010)................................................................................21

*Iragorri v. United Techs. Corp.*,
274 F.3d 65 (2d Cir. 2001).........................................................................................29, 30

*John Wiley & Sons, Inc. v. Treeakarabenjakul*,
2009 U.S. Dist. LEXIS 52819 (S.D.N.Y. June 17, 2009).........................................................5

*Kashi v. Gratsos*,
790 F.2d 1050 (2d Cir. 1986)...........................................................................................19

*Kernan v. Kurz-Hastings, Inc.*,
175 F.3d 236 (2d Cir. 1999).......................................................................................21, 23

*Kidd v. Thomson Reuters Corp.*,
925 F.3d 99 (2d Cir. 2019)..............................................................................................16

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
330 U.S. 518 (1947)......................................................................................................29

*Kraus v. Prof'l. Bureau of Collections*,
281 F. Supp. 3d 312 (E.D.N.Y. 2017) ..................................................................................4

*Kreutter v. McFadden Oil Corp.*,
71 N.Y.2d 460 (1988) ....................................................................................................18

*LaMarca v. Pak-Mor Mfg. Co.*,
95 N.Y.2d 210 (2000) ....................................................................................................21

*Leasco Data Processing Equipment Corp. v. Maxwell*,
468 F.2d 1326 (2d Cir. 1972)...........................................................................................24

*Maersk, Inc. v. Neewra, Inc.*,
 554 F. Supp. 2d 424 (S.D.N.Y. 2008)................................................................24

*In re Magnetic Audiotape Antitrust Litig.*,
 334 F.3d 204 (2d Cir. 2003) (per curiam)........................................................23

*McKee Elec. Co. v. Rauland-Borg Corp.*,
 20 N.Y.2d 377 (1967) .......................................................................................16

*McLaughlin v. Anderson*,
 962 F.2d 187 (2d Cir. 1992)................................................................................5

*MCM Partners, Inc. v. Andrews-Bartlett & Assocs.*,
 62 F.3d 967 (7th Cir. 1995) ..............................................................................41

*Miller Brewing Co. v. Landau*,
 616 F.Supp. 1285 (D.Wis.1985) ........................................................................28

*Modaressi v. Vedadi*,
 441 F. Supp. 2d 51 (D.D.C. 2006) ....................................................................27

*Moreno-Bravo v. Gonzales*,
 463 F.3d 253 (2d Cir. 2006)..............................................................................27

*N.C. Mut. Life Ins. Co. v. Stamford Brook Capital, Ltd. Liab. Co.*,
 No. 1:16CV1174, 2019 U.S. Dist. LEXIS 166673
 (M.D.N.C. Sep. 27, 2019) ..................................................................................27

*Napoli v. United States*,
 45 F.3d 680 (2d Cir. 1995).................................................................................41

*In re National Presto Industries, Inc.*,
 347 F.3d 662 (7th Cir. 2003) ............................................................................30

*New York v. United Parcel Serv., Inc.*,
 131 F. Supp. 3d 132 (S.D.N.Y. 2015)......................................................31, 39, 40

*Pani v. Empire Blue Cross Blue Shield*,
 152 F.3d 67 (2d Cir. 1998).................................................................................4

*Pasquantino v. United States*,
 544 U.S. 349 (2005)...........................................................................................16

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
 640 F.3d 497 (2d Cir. 2011)...............................................................................21

*Perrone v. Amato,*
No. CV 09-316 (AKT), 2017 U.S. Dist. LEXIS 103642
(E.D.N.Y. June 30, 2017) .................................................................20

*Phoenix Consulting, Inc. v. Republic of Angola,*
216 F.3d 36 (D.C. Cir. 2000) .............................................................23

*Pilates, Inc. v. Pilates Inst., Inc.,*
891 F. Supp. 175 (S.D.N.Y. 1995) .......................................................5

*In re Platinum & Palladium Commodities Litig.,*
828 F. Supp. 2d 588 (S.D.N.Y. 2011) .................................................41

*PT United Can Co. v. Crown Cork & Seal Co.,*
138 F.3d 65 (2d Cir. 1998).................................................................26

*RegenLab USA, LLC v. Estar Techs. Ltd.,*
2018 U.S. Dist. LEXIS 138065 (S.D.N.Y. Aug. 15, 2018) ....................22

*Related Companies, L.P. v. Ruthling,*
No. 17-cv-4175, 2017 WL 6507759 (S.D.N.Y. Dec. 18, 2017) ..............25

*Related Cos., L.P. v. Ruthling,*
2017 U.S. Dist. LEXIS 207857 (S.D.N.Y. Dec. 15, 2017) ....................22

*Retail Software Services v. Lashlee,*
854 F.2d 18 (2d Cir. 1988)................................................................18

*Rexam Healthcare Packaging, Inc. v. Osiris Med., Inc.,*
2010 U.S. Dist. LEXIS 21702 (N.D. Ohio March 9, 2010)..............28, 30

*Rolls-Royce Corp.,*
576 F.Supp.2d at 782 (N.D.Tex. 2008)...............................................28

*Rutland R. Corp. v. Bhd. of Locomotive Eng'rs,*
307 F.2d 21 (2d Cir. 1962)................................................................27

*S. New Eng. Tel. Co. v. Glob. NAPs Inc.,*
624 F.3d 123 (2d Cir. 2010)................................................................4

*Sea Trade Mar. Corp. v. Coutsodontis,*
2012 U.S. Dist. LEXIS 119206 (S.D.N.Y. Aug. 15, 2012) ....................20

*Secured Asset Mgmt., LLC v. Dushinsky,*
No. 17-cv-05588 (DLI)(CLP), 2019 U.S. Dist. LEXIS 172102
(E.D.N.Y. Sep. 30, 2019) ....................................................................4

*Sky Med. Supply Inc. v. SCS Support Claims Servs.*,
17 F. Supp. 3d 207 (E.D.N.Y. 2014) .................................................................5

*State of N.Y. v. Mountain Tobacco Co.*,
No. 12-CV-6276, 2016 WL 324970 (E.D.N.Y. Jan. 26, 2016) ...............................43

*Suarez Corp. Indus. v. McGraw*,
71 F. Supp. 2d 769 (N.D. Ohio 1999).................................................................29

*Sygall v. Pitsicalis*,
2018 U.S. Dist. LEXIS 194562 (S.D.N.Y. Nov. 14, 2018)...................................16

*Tooker v. Guerrera*,
No. 15-CV-2430(JS)(ARL), 2016 U.S. Dist. LEXIS 107757
(E.D.N.Y. Aug. 15, 2016)................................................................................41

*Trussell v. United Underwriters Ltd.*,
228 F. Supp. 757 (D. Colo. 1964)............................................................ 15-16, 19

*United States v. Bank of Am. Account #xxxxxxxx4939*,
No. 5:14-CV-723 (ATB), 2015 U.S. Dist. LEXIS 4785
(N.D.N.Y. Jan. 15, 2015).................................................................................30

*United States v. Di Maria*,
727 F.2d 265 (2d Cir. 1984)...............................................................................1

*United States v. Funds from First Reg'l Bank*,
639 F. Supp. 2d 1203 (W.D. Wash. 2009).........................................................3, 32

*United States v. Mahoney*,
2006 U.S. Dist. LEXIS 66382 (E.D. Wash. Sep. 15, 2006) ...............................3, 32

*United States v. Mahoney*,
2007 U.S. Dist. LEXIS 19074 (E.D. Wash. Mar. 19, 2007)...............................3, 32

*United States v. Mohamed*,
759 F.3d 798 (7th Cir. 2014) ..............................................................................1

*United States v. Montour*,
2010 U.S. Dist. LEXIS 64705 (W.D. Wash. May 3, 2010)..........................3, 32, 37

*United States v. Zichettello*,
208 F.3d 72 (2d Cir. 2000)...............................................................................42

*Van Schaick v. Church of Scientology of Cal., Inc.*,
535 F. Supp. 1125 (D. Mass. 1982) ..................................................................27

*Welch Foods, Inc. v Goldman, Sachs & Co.*,
  398 F Supp. 1393 (S.D.N.Y. 1974) ...............................................................15, 19

*Whitaker v. Am. Telecasting, Inc.*,
  261 F.3d 196 (2d Cir. 2001).........................................................................4

*Wyndham Associates v. Bintliff*,
  398 F.2d 614 (2d Cir. 1968)........................................................................30

## **Statutes**

15 U.S.C. § 375 (6) ...............................................................................43

15 U.S.C. § 375 (10) .............................................................................43

15 U.S.C.  § 375 *et seq*..........................................................................2

18 U.S.C. § 1962(c) ..............................................................................2, 42

18 U.S.C. § 1962(d) .............................................................................2, 42

18 U.S.C. § 1965.....................................................2, 24, 25, 26, 27, 29

18 U.S.C. § 1965(b) .............................................................................24, 27, 28

18 U.S.C. § 2341 ....................................................................................2, 32

18 U.S.C. § 2341(2) ..............................................................................34, 35

18 U.S.C.S. § 2342 ...............................................................................35

18 U.S.C. § 2342(a) ..............................................................................32

**Statutes**                                                                  **Pages**

28 U.S.C. §1391 .........................................................................................27

C.P.L.R. § 302 .....................................................................................22, 23

C.P.L.R. § 302(a) ......................................................................................11

C.P.L.R. § 302(A)(1) .........................................................................15, 16, 18

C.P.L.R. § 302(a)(2) ...............................................................................18, 21

C.P.L.R. § 302(a)(3)(ii) ..............................................................................21

Fed. R. Civ. P. 8 .................................................................................38, 39

Fed. R. Civ. P. 9 ..................................................................................4, 41

Fed. R. Civ. P. 9(b) ....................................................................................41

Fed. R. Civ. P. 12 .......................................................................................4

Fed. R. Civ. P. 12(b)(2) ............................................................................1, 5

Fed. R. Civ. P. 12 (b)(6) ...........................................................................1, 4

**Other Authorities**

David B. Smith & Terrance G. Reed,
   1 *Civil RICO* ¶ 6.02 (2019) .................................................................26

*Restat. 2d of Torts*, § 874A (2nd Ed. 1979) ...............................................16

Plaintiff the City of New York (the "City") respectfully submits this memorandum of law in opposition to the motion by certain defendants to dismiss certain claims pursuant to Rules 12(b)(2) and 12(b)(6). *Dkt. No.* 30. *See Memorandum of Law In Support of the Cigarettes Unlimited Defendants' Partial Motion To Dismiss The Complaint*, *Dkt. No.* 31 ("*Def. Mem.*").[1]

## PRELIMINARY STATEMENT

---

"'Bootleg cigarettes' are those purchased in a low-tax state, *e.g.*, North Carolina, and then transported to a high-tax state, *e.g.*, New York." *United States v. Di Maria*, 727 F.2d 265, 268 (2d Cir. 1984).[2] Virginia retailer Cigarettes Unlimited, L.C. ("Cigarettes Unlimited"), by its owners has admitted selling bootleg cigarettes to New York residents over the course of 18 years.

Cigarettes Unlimited contend, correctly that "[e]ach of the City's four claims rise and fall on its contention that the Cigarettes Unlimited Defendants knew the cigarettes sold in Virginia

---

[1] Cigarettes Unlimited seeks dismissal pursuant to Rule 12(b)(2) or Rule 12 (b)(6) of all claims as to all defendants affiliated with Cigarettes Unlimited, L.C., except for the PACT Act claims against John Lash, Stephen Riley and Cigarettes Unlimited, L.C. *See Def. Mem.* 26. Inconsistently, the "Conclusion" section of the defendants' memorandum seeks dismissal of all claims except for "the PACT Act claims against Mr. Lash and Cigarettes Unlimited," *Def. Mem.* 28, omitting Mr. Riley.  In yet a third iteration, the Cigarettes Unlimited Defendants assert that "the City's claims against the Cigarettes Unlimited Defendants under the …. PACT Act should be dismissed, *Def. Mem.* 2, apparently seeking dismissal even as to Lash and Riley.  All of Cigarettes Unlimited's arguments for dismissal fail on their merits; hence there is no need to untangle these inconsistencies.

[2] Disparities in state cigarette tax rates, which range for example from $3.00 per carton in Virginia to $43.50 per carton in New York, allow cigarette traffickers to profit by buying cigarettes in low-tax states and reselling them in high-tax states, without paying the latter state's taxes. As a result of the tax disparity, the cigarette trafficker can sell the cigarettes below the market price in the high-tax state, while still earning a large profit; the greater the tax disparity between two states, the greater the potential profit. *See United States v. Mohamed*, 759 F.3d 798, 800-01 (7th Cir. 2014). In this memorandum cigarettes bearing Virginia tax stamps but present in New York are referred to as "untaxed" or "unstamped" cigarettes.  *See New York v. United Parcel Service, Inc.,* 17-1993-cv, Dkt. No 295-1 at 9 (2d Cir. November 7, 2019) ("it is immediately apparent that the tax has not been paid on cigarettes not bearing stamps)."

subsequently would be transported and sold by other parties into New York …" *Def. Mem.* 1.[3] Accordingly, dismissal of any claim or any defendant can be denied now: Asked if Cigarettes Unlimited's bulk buyers of cigarettes were from New York, Cigarettes Unlimited owner John Lash responded, "Yeah, I knew that's where they were taking it. Yeah." Stephen Riley, Cigarettes Unlimited's other owner, likewise responded, Did I know for sure? No;  Did I assume, yeah." Julian Peters-Brandon, manager of one Cigarettes Unlimited store, explained that black plastic garbage bags were placed on packages of cigarettes taken from the store, but only for "out-of-state" buyers. *See Declaration of John S. Cielakie*, sworn to November 7, 2019 ("*Cielakie Decl.*"), ¶¶ 32, 34, 35.  *Six* traffickers of cigarettes from Cigarettes Unlimited confirm that Cigarettes Unlimited's employees knew of the transport of cigarettes purchased at the store to New York City. *See Declarations of Debra Antico* ("*D. Antico Decl*,") *Joseph Antico* ("*J. Antico Decl.*"), *Mary Davern,* ("*Davern Decl.*") and *Meryl McGowan* ("*McGowan Decl.*").

The admitted knowledge of New York sales by Cigarettes Unlimited's owners and employees establishes personal jurisdiction over all defendants for all claims. Acting with such knowledge *is* the purposeful availment of the New York market that subjects Cigarettes Unlimited, its owners and its employees to long-arm jurisdiction under several sections of C.P.L.R. § 302. Personal jurisdiction also lies under 18 U.S.C. § 1965(b) as to the claims under the Racketeer Influenced Corrupt Organizations Act ("RICO"), once Cigarettes Unlimited's erroneous understanding of that special venue provision is debunked.  The residence of *six*, if not more, of Cigarettes Unlimited co-conspirators in the Eastern District of New York is an independent basis for jurisdiction over *all* of Cigarettes Unlimited's owners and employees as to

---

[3]*The* City's four claims against Cigarettes Unlimited arise under the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 et seq. ("CCTA"), the Prevent All Cigarette Trafficking Act. 15 U.S.C.  § 375 *et seq.*  ("PACT Act") and the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962(c) and (d) ("RICO").

the RICO claims pursuant to 18 U.S.C. § 1965, and to do so satisfies the "ends of justice" as the term is construed by most courts.

Cigarettes Unlimited's correct contention that "the City's four claims rise and fall" on the basis of knowledge likewise bars dismissal of the City's Contraband Cigarette Trafficking Act ("CCTA") and RICO claims. Cigarettes Unlimited acknowledges that two district courts in this circuit have found CCTA liability over out-of-state cigarette sellers that sell cigarettes in compliance with their own state laws, but know the cigarettes are to be distributed into New York. *Def. Mem.* 17 (citing *City of N.Y. v. Hatu*, No. 18-CV-848, 2019 U.S. Dist. LEXIS 91576 (S.D.N.Y. May 31, 2019); *City of N.Y. v. Chavez*, 944 F. Supp. 2d 260, 265 (S.D.N.Y. 2013).[4] The contention that the CCTA has no force against intrastate conduct intended to result in the *interstate* distribution of unstamped cigarettes (*Def. Mem.* 17), has been rejected by every court to which the argument was offered.[5] Cigarettes Unlimited, its owners and employees violated the CCTA, and thus RICO, by selling cigarettes in Virginia, knowing the cigarettes would be distributed into New York.

Cigarettes Unlimited premises many jurisdictional and merits arguments on pleadings characterized as "grouped pleading," described as insufficiently particularized allegations against individual defendants. *See, e.g.*, *Def. Mem.* 18. The argument is meritless, first because the supposed "grouping" is accomplished by means of a carefully defined shorthand definition − the

---

[4] Cigarettes Unlimited's concession does not go far enough. The decisions in *Hatu* and *Chavez* accord with several earlier decisions holding that cigarettes, even if sold in compliance with the laws of a seller's jurisdiction, are "contraband" within the meaning of the CCTA if "found" in another jurisdiction without the tax stamps required by that jurisdiction. *See City of N.Y. v. Golden Feather Smoke Shop, Inc.*, 2013 U.S. Dist. LEXIS 47037 (E.D.N.Y. Mar. 29, 2013); *City of N.Y. v. Milhelm Attea & Bros.*, 2012 U.S. Dist. LEXIS 116533, at *41 (E.D.N.Y. Aug. 17, 2012); *United States v. Montour*, 2010 U.S. Dist. LEXIS 64705, at *10-20 (W.D. Wash. May 3, 2010); *United States v. Funds from First Reg'l Bank*, 639 F. Supp. 2d 1203, 1210 (W.D. Wash. 2009); *United States v. Mahoney*, 2007 U.S. Dist. LEXIS 19074, at *4-5 (E.D. Wash. Mar. 19, 2007); *United States v. Mahoney*, 2006 U.S. Dist. LEXIS 66382, at *34 (E.D. Wash. Sep. 15, 2006); *see also City of N.Y. v. Bello*, 579 F. App'x 15, 17 (2d Cir. 2014).

[5] See note 4.

3

"Cigarettes Unlimited Defendants" − that makes every allegation applicable to each identified individual included within the term, as if the allegation were made against the individual by name.

More fatal to Cigarettes Unlimited argument is that the prohibition against "group pleading" is applicable only to pleading fraud, governed by F. R. Civ. Proc. 9, not at issue here.

## LEGAL STANDARDS

The standard for deciding a motion to dismiss is sufficiently well-known as to not require repetition here. *See Kraus v. Prof'l. Bureau of Collections*, 281 F. Supp. 3d 312 (E.D.N.Y. 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Although a review on a motion under Rule 12(b)(6) principally considers the complaint, *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998), extrinsic documents that have been relied upon by a plaintiff "heavily," or that are "integral" to the complaint may be considered. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). The plaintiff's reliance on the information is decisive of the facts may be permissibly considered on a motion to dismiss. *Id.*[6]; *see also City of N.Y. v. Cyco.net, Inc.*, 383 F. Supp. 2d 526, 539 (S.D.N.Y. 2005) ("the Court may consider the factual allegations in Plaintiff's RICO Statement as a supplement to the complaint.") (citing *McLaughlin v. Anderson*, 962 F.2d 187, 189 (2d Cir. 1992); *Binghamton Masonic Temple, Inc. v. Bares*, 96-6228, 1999 U.S. App. LEXIS 18139, at *3 (2d Cir. July 30, 1999) (the "complaint and RICO statement must be read together"); *Sky Med. Supply Inc. v. SCS Support Claims Servs.*, 17 F. Supp. 3d 207, 219 n.3 (E.D.N.Y. 2014) (accepting as true the

---

[6] Information extrinsic to a complaint is excluded on a motion to dismiss only to protect *plaintiffs* from having to defend against facts not known to them, *Chambers,* 282 F.3d 152-153, an issue not present here.

factual allegations set forth in a RICO statement).[7] The City's Complaint relies heavily on materials provided by the Spotsylvania County Sheriff's Office, *see Compl.* ¶¶ 67-69, and on statements by Cigarettes Unlimited's co-conspirator traffickers, all of which accordingly may be considered on this motion. *See City of N.Y. v. Hatu*, 2019 U.S. Dist. LEXIS 91576 (S.D.N.Y. May 31, 2019) (considering co-conspirator affidavits in denying dismissal under Rule 12 (b) (2)).

Limits on extrinsic evidence in any case do not apply to Rule 12 (b)(2) motions: "Because a motion to dismiss for lack of personal jurisdiction is 'inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion.'" *Energy Brands Inc. v. Spiritual Brands Inc.*, 571 F. Supp. 2d 458, 463 (S.D.N.Y. 2008).[8]  A plaintiff may establish jurisdiction through its "'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *S. New Eng. Tel. Co. v. Glob. NAPs Inc*., 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).[9]

---

[7] Although there is no formally designated "RICO Statement" here, the above-cited cases establish the Second Circuit's imprimatur on the supplementation of a complaint's allegations with documents such as the declarations provided here.

[8] *Accord* quoting *Pilates, Inc. v. Pilates Inst., Inc*., 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995)); *Grand v. Schwarz*, 2016 U.S. Dist. LEXIS 61606 (S.D.N.Y. May 10, 2016); *John Wiley & Sons, Inc. v. Treeakarabenjakul*, 2009 U.S. Dist. LEXIS 52819, at *7 (S.D.N.Y. June 17, 2009).

[9] In considering extrinsic facts, the Court has the option to convert this motion into one for summary judgment, to which the City would raise no objection. *See* Rule 12; *Secured Asset Mgmt., LLC v. Dushinsky*, No. 17-cv-05588 (DLI)(CLP), 2019 U.S. Dist. LEXIS 172102, *10-11 (E.D.N.Y. Sep. 30, 2019); *Gansas v. City of N.Y.*, No. 05-CV-5484, 2006 U.S. Dist. LEXIS 52419 (E.D.N.Y. July 28, 2006) (Glasser, J.).

## SUMMARY OF FACTS

---

Cigarettes Unlimited mistakenly contends that "the City seeks tens of millions in dollars in damages and penalties from Cigarettes Unlimited, its owners and employees arising from cigarette sales that occurred in Virginia over the course of three months in 2019." *Def. Mem*. 1. In fact, the City seeks redress for a tax evasion scheme that Cigarettes Unlimited owner John Lash admits has been in place "about 18 years," *Cielakie Decl.*, ¶ 31, for which the damages and penalties have yet to be quantified.

Facts relevant to both personal jurisdiction and the merits of the City's causes of action are set forth in the Complaint (*Dkt. No*. 1), the declaration of John S. Cielakie and accompanying exhibits and the declarations of 4 traffickers of cigarettes from Cigarettes Unlimiteed.   For convenience, limited, but salient, facts are summarized here.

### 1.    Complaint

The Complaint alleges:

> Cigarettes Unlimited's three retail stores are owned by Defendants Lash and Riley, and *operated by them and their wives,* Anita Lash and Mary Riley. *The Cigarettes Unlimited stores are also operated by employees* Shana L. Biller, Margaret L. Clark, Candice S. Fox, Monique Pearson, Julius Peters-Brandon, Joanna S. Petties, Paula K. Sloan, Derrick L. Whiting, Jessica Whitehead, Elizabeth R. Windham and John or Jane Does 1- 15.

*Compl*. ¶ 52 (emphasis added)

> Cigarettes Unlimited's three retail stores, CU-Fredericksburg, CU-Stafford and CU-Dale City are each involved with supplying cigarettes to the Traffickers.

*Compl*. ¶ 54

> The Traffickers telephone their orders to Cigarettes Unlimited, from telephone numbers identifiable as having New York City area codes, typically on the same day of the week. The cigarette orders are then passed internally to Cigarettes Unlimited's employees.

> The employees assemble the order for a particular Trafficker and set the order aside in advance of the Trafficker's arrival, also typically on the same day each week

*Compl.* ¶ 57

> After entering the stores with satchels of cash and leaving without them, the Traffickers load into their vehicles black plastic bags that appear to be filled with master cases or half-cases of cigarettes. Cigarettes Unlimited's employees frequently assist in loading the purchases into the Traffickers' vehicles, which bear New York plates.

*Compl.* ¶ 59

### 2.   Declaration of John S. Cielakie

> SCSO deputies observed employees of Cigarettes Unlimited transporting from the stores to waiting vehicles master cases and half-cases[10] believed to contain cigarettes, wrapped in black plastic garbage bags.   The vehicles loaded by Cigarettes Unlimited employees were usually parked by a side door, positioned to avoid observation of the loading, and often during early morning hours before the stores opened to the public.   The vehicles loaded by Cigarettes Unlimited employees usually displayed New York State license plates.

*Cielakie Decl.,* ¶ 10

### 3.   Cigarettes Unlimited Owner John Lash

> Q.   Did you know that they were going to be bringing their, their bulk orders back to New York?
>
> A.   Yeah, I knew they were from…. I knew that's where they were taking it.  Yeah.

*Cielakie Decl.* ¶ 32; Ex. 3

### 4.   Cigarettes Unlimited Owner Stephen Riley

> Q.   Did you know people were coming down from New York just to buy"?
>
> A.   Did I know for sure? No; Did I assume, yeah.

---

[10] I know from my experience and training that a master case of cigarettes contains 60 cartons of cigarettes and a half-case contains 30 cartons.

*Cielakie Decl.* ¶ 34; Ex. 4.

### 5.     Declaration of Joseph Antico, Jr.

When we arrived at Cigarettes Unlimited at 7 a.m., the store was closed to the public; there were never any customers in the store. We parked in the parking area adjacent to the front door of the store. After we arrived, Julius would bring cases of cigarettes from the rear door of the store to the parking lot. The cases of cigarettes were always wrapped in black plastic garbage bags.

*J. Antico Decl.* ¶ 6

### 6.     Declaration of Debra Antico

I placed my cigarette orders over the telephone before driving down to Cigarettes Unlimited. I called either of two persons, known to me as "Julius," and "Paula"; usually "Julius." I understood Julius [Peters-Brandon] to be the manager and Paula [Sloan] to be the assistant manager of Cigarettes Unlimited Dale City location.

*D. Antico Decl.* ¶ 5

### 7.     Declaration of Mary Davern

I began purchasing cigarettes in Virginia for transport back to Staten Island approximately 12 to 13 months ago. I had learned from Robert Schmidt, a friend of mine from whom I used to purchase cigarettes, that I could earn extra money by buying cigarettes in Virginia and re-selling them in New York. For my first purchase I went to Cigarettes Unlimited with Schmidt. He introduced me to "Paula" at the Dale City store …. I initially would travel to Cigarettes Unlimited once a week and purchase from 80 to 100 cartons. After Paula told me I could receive a one dollar per carton discount if I bought 100 cartons and a $2 per carton discount if I bought 200 cartons, I switched to going down every other week and buying 200 cartons. …. Julius, the store manager, knew that I was from New York, based on our small-talk about the drive, traffic and the weather. Julius knew that Rob Schmidt and the Anticos were from New York. … I am absolutely sure that the store workers at Cigarettes Unlimited knew I was from New York.

*Davern Decl.* ¶¶ 3, 4, 9

8

> After learning of Rob Schmidt's arrest, I immediately called Cigarettes Unlimited again and spoke with "Candice." I told Candice that Schmidt had been arrested in Staten Island. Candice said she would call "John," who I believed was the store owner. When I spoke to Candice later that day she told me that John had directed her to cancel my order because of the arrests of the Anticos and Schmidt. … Nonetheless, when I placed an order about two weeks after Rob Schmidt's arrest, with Julius, that order was accepted.

*Id.* ¶ 12, 13

### 8.    Declaration of Meryle McGowan

> I began purchasing cigarettes in Virginia for transport back to Brooklyn some time in 2015.  …. I traveled to Cigarettes Unlimited approximately once a month or every other month and purchased approximately 50 to 100 cartons each time, which I brought back to Brooklyn and sold to friends and family.

*McGowan Decl.* ¶ 3

> Paula called me sometime this year and said that John told her (Paula) to call me and Lee and tell them that Debbie and Rob had been arrested and that I should not come to Cigarettes Unlimited anymore.

*Id.* ¶ 17

### 9.    The Trafficking Memorandum (Cielakie Decl. Ex. 1)

The "Trafficking Memorandum" is an undated memorandum now believed to be written by defendant Candice Fox, daughter of Cigarettes Unlimited's assistant manager Paula Sloan, to "Julius," discussing the arrest of Trafficker Robert Schmidt. *See Compl.* ¶ 67.[11] The Trafficker Memorandum provides in part:

> Rob was arrested Tuesday night after being here. Mary said "they" followed him and got him up north. . . . .

---

[11] The Complaint alleges that the Trafficker Memorandum was written by Paula Sloan, *Compl.* ¶ 67. Subsequent information suggests that the author was defendant Candice Fox, who has been identified as Paula Sloan's daughter. The Memorandum contains several references to "mom," and also references a telephone call from "Mary," likely trafficker Mary Davern, who reported informing Candice Fox by telephone of the arrest of Rob Schmidt. *Davern Decl.* ¶ 12.

* * *

> Before finding all of that out Rob wanted mom to ask John if he knew anything about Virginia State Troopers following people back to New York because that is what Debbie is claiming happened. Then Mary said "They" followed Rob.  John thinks that's bullshit and Debby probably turned Rob in. But after thinking about it John called back and said we need to cool it down and NOT have any buyers this week or next week and to cancel there [*sic*] orders.  I cancelled the ones I put in today.  Mary knows because she called after that and mom told Joe already. So you still need to call Meryle and Lee because they had orders put in for next week.

*Cielakie Decl*. Ex. 1.

## DEFINED TERMS

"**Cigarettes Unlimited Defendants**" −  As set forth in Complaint, the term "Cigarettes Unlimited Defendants" refers to Cigarettes Unlimited, L.C., John A. Lash, III, Anita Lash, Stephen Dabney Riley, Shana L. Biller, Mary Riley, Margaret L. Clark, Candice S. Fox, Monique Pearson, Julius Peters-Brandon, Joanna S. Petties, Paula K. Sloan, Derrick L. Whiting, Jessica Whitehead, and Elizabeth R. Windham.  *Compl*. ¶ 5.

"**Grouped Defendants**" **–** The Cigarettes Unlimited Defendants arbitrarily segregate Anita Lash, Stephen Dabney Riley, Shana L. Biller, Mary Riley, Margaret L. Clark, Candice S. Fox, Monique Pearson, Joanna S. Petties, Derrick L. Whiting, Jessica Whitehead, and Elizabeth R. Windham under the term the "Grouped Defendants."  *Def. Mem*. 4.  The City does not concur that there is any basis to segregate these defendants from the City's definition of the "Cigarettes Unlimited Defendants," but will use Cigarettes Unlimited's term when necessary for clarity.

Based on these definitions, the assertion that "the City fails to mention any of the "Grouped Defendants" by name anywhere in the Complaint," *Def. Mem*. 20, is nonsensical.  Each "Grouped Defendant" is identified *by name* as included within the term "Cigarettes Unlimited Defendants" in paragraph 5 of the Complaint, which term serves as a stand-in or equivalence to avoid repeating a string of individual names *ad nauseum*.

 "**Traffickers**" **–** The term "Traffickers" refers to defendants Debra A. Antico, Joseph N. Antico, Thomas Guglielmo, Meryle McGowan, Robert A. Schmidt, Razik K. Sharki, John or Jane Doe 1-30 and Mary Davern, a trafficker of cigarettes from Cigarettes Unlimited not named as a defendant.

## ARGUMENT

I.   **THE COURT HAS PERSONAL JURISDICTION OVER CIGARETTES UNLIMITED, L.C. AND EVERY "CIGARETTES UNLIMITED DEFENDANT" DEFINED IN THE COMPLAINT.**

Cigarettes Unlimited glosses over prior decisions, under comparable facts, that have rejected challenges to personal jurisdiction by out-of-state cigarette sellers who, although never physically present in New York, shipped unstamped cigarettes into New York.  *See City of N.Y. v. Hatu*, No. 18-CV-848, 2019 U.S. Dist. LEXIS 91576 (S.D.N.Y. May 31, 2019); *Cyco.Net, Inc.*, 383 F. Supp. 2d 526.[12]  The present facts, when addressed under New York's long-arm statute, compel the same result, over each Cigarettes Unlimited Defendant.

Defendants recognize that, "C.P.L.R. § 302(a) requires that, [as to] the Grouped Defendants the City must prove that the Grouped Defendants …. "*knew that any of the cigarettes . . . sold were destined for resale in New York*." *Def. Mem*. 9 (emphasis added). That knowledge is plausibly alleged as to each "Grouped Defendant." To begin with, Cigarettes Unlimited omits reference to important jurisdictional allegations in the Complaint, which plead the existence of knowledge (*see Def. Mem*. 9-10);  second, the Traffickers' declarations confirm the Complaint's allegations, and prevents branding them as "conclusory"; third, the Trafficker Memorandum plausibly suggests that Cigarettes Unlimited's trafficking operations were broadly known to store

---

[12] Cigarettes Unlimited adopts the disingenuous tactic of repeatedly citing to an unpublished order, "*Hatu I*," which initially found insufficient allegations to support personal jurisdiction over North Carolina cigarette seller Amjed Hatu until the complaint was amended to include sworn statements of traffickers who described Hatu's knowledge of cigarette bootlegging into New York. *See Hatu*, 2019 U.S. Dist. LEXIS 91576, at * at *20-21. Following submission of those affidavits, the *Hatu* court concluded that … "the allegations here are more concrete and fulsome" than in *Hatu I*, so that "[t]he Court finds that the [complaint]—now fortified by the [traffickers'] affidavits … adequately alleges Hatu's knowledge." *Id*. Cigarettes Unlimited thus relies on a decision that was effectively reversed on the basis of evidence precisely like that provided here.

employees; fourth, the admissions of knowledge by Cigarettes Unlimited owners and managers make

it plausible that *all* of the Cigarettes Unlimited Defendants knew of the store's trafficking.[13]

> **1.     The Complaint --** As alleged in the Complaint:

> > Cigarettes Unlimited … sells out-sized portions of its inventory of Virginia stamped cigarettes to individuals *known to Cigarettes Unlimited's owners and employees to shuttle between Virginia and New York*, buying low in Virginia, and selling high in New York.[14]

*Compl.* ¶ 4 (emphasis added)

> > Cigarettes Unlimited's three retail stores are owned by Defendants Lash and Riley, and operated by them *and their wives, Anita Lash and Mary Riley.* The Cigarettes Unlimited stores are also *operated by employees* Shana L. Biller, Margaret L. Clark, Candice S. Fox, Monique Pearson, Julius Peters-Brandon, Joanna S. Petties, Paula K. Sloan, Derrick L. Whiting, Jessica Whitehead, Elizabeth R. Windham and John or Jane Does 1- 15.

*Compl.* ¶ 52 (emphasis added) The Complaint thus expressly alleges that Cigarettes Unlimited

owners and employees know of the tax arbitrage scheme in which the store participates, *Compl.*

¶ 4, and that each of its owners, the wives of its owners and the employees named in the

Complaint "operate" the stores with that knowledge. *Compl.* ¶ 52. The allegations are not

"conclusory," because Complaint paragraphs 54, 57, 58 and 59, and the Trafficker declarations,

and the Trafficker Memorandum provide specific facts as to how the "Grouped Defendants" gain

knowledge by operating the three Cigarettes Unlimited locations, (*Compl.* ¶ 54), *i.e.*, through

incoming telephone calls from New York area codes, (*Compl.* ¶ 57), through traffickers paying

---

[13] Cigarettes Unlimited seeks dismissal for lack of personal jurisdiction against the "Grouped Defendants," which includes Stephen Riley, *Def. Mem.* 9, but later concedes personal jurisdiction over Riley under the PACT Act, *Def. Mem.* 26.

[14] Other allegations of knowledge are found in the RICO counts:

> Each Cigarettes Unlimited Defendant participates in the affairs of the Cigarettes Unlimited Enterprise by selling tax-paid Virginia cigarettes to the Traffickers with the knowledge that the Traffickers intend to and do in fact transport the cigarettes into New York City for distribution and sale in the City.

*Compl.* ¶ 78; *see also Compl.* ¶ 89(c); ¶ 92. These allegations of knowledge are not "conclusory" because they are supported by specific facts in the Complaint, outlined above.

cash in amounts in excess of $10,000 (*Compl*. ¶ 58), through use of black plastic bags to conceal transfers of goods from the stores to known traffickers' vehicles (*Compl*. ¶ 59), through employees' loading of vehicles bearing New York plates, *id.*, and through the cancellation of orders following customer arrests. *Cielakie Decl*. Ex. 1; *Davern Decl*. ¶ 12. Cigarettes Unlimited quibbles that these indicators cannot support an *inference* of knowledge, but offer no other plausible explanation for this decidedly odd constellation of business practices, some of are emblematic of bootlegging. *See, e.g., City of N.Y. v. Golden Feather Smoke Shop, Inc.*, No. 08-CV-3966 (CBA), 2009 U.S. Dist. LEXIS 76306 57-58 (E.D.N.Y. Aug. 25, 2009) (referring to traffickers' use of black plastic garbage bags).

2.	**Lash/Riley Admissions** – The Complaint's allegations of knowledge on the part of the "Grouped Defendants" are still more plausible in the face of owner John Lash's admission that he <u>knows</u> his customers buy cigarettes for transport to New York ("Yeah, I knew a lot of them are from New York …."), by owner Reilly's "assumption" that store customers were from New York, and by Peters-Brandon's admission that black plastic garbage bags were provided only to out-of-state customers. *See Cielakie Decl*.¶¶ 32, 34, 36; Exs. 3, 4. Owners Lash and Reilly appear to accept Virginia to New York cigarette bootlegging as common knowledge: "I mean … where else would they take cigarettes up north?" (Lash); "I mean where else are they going to deal with it?" (Riley). *Cielakie Decl*.¶¶ 32, 34; Exs. 3, 4. Riley certainly understands the economic basis of bootlegging: "I think it's the northern states, they put the unbelievable taxes on cigarettes, I mean they create the problem", *Cielakie Decl*.¶ 34; Ex. 4, as does Lash. *Cielakie Decl*.¶ 31; Ex. 3.    It is plausible, even likely, that Lash and Riley, as owners, conveyed their knowledge to the "Grouped Defendants" − store employees who were responsible for servicing

the Traffickers' large volume, all-cash sales.  Indeed, it is even plausible that, like Lash and Riley, store employees were generally knowledgeable of Virginia to New York bootlegging.

     **3.**     **Trafficker Declarations –** Every single Trafficker has stated that store manager Julius Peters-Brandon and assistant manager Paula Sloan were fully knowledgeable about the trafficking to New York.  The Traffickers were either "100% certain" that Peters-Brandon and Sloan knew the Traffickers were from New York, *Davern Decl.* ¶ 9; *McGowan Decl.* ¶ 16, or flatly informed Peters-Brandon and Sloan of that fact. *D. Antico Decl.* ¶ 16; *McGowan Decl.* ¶ 16. Peters-Brandon knew he was servicing out-of-state customers in illegal transactions. *Cielakie Decl.* ¶¶ 35, 36; Ex. 5.

     **4.**     **The Trafficker Memorandum** - The Trafficker Memorandum provides still another powerful basis to attribute knowledge to the "Grouped Defendants." That memorandum, probably written by "Grouped Defendant" Candice Fox (*see* n. 10), shows her to be fully familiar with Cigarettes Unlimited's trafficking, referring to the arrest of a Trafficker *in New York*, referring by name to other Traffickers, and discussing cancelling orders at the direction of owner Lash following Trafficker arrests. *See Cielakie Decl.* Ex. 1 ("we need to cool it down"). It is plausible that other "Grouped Defendants" had the same or similar knowledge, a matter that can be determined by jurisdictional discovery if need be.

     Cigarettes Unlimited's contention that "There are no assertions that Ms. Sloan or Mr. Peters-Brandon knew that Defendant Antico's orders were being transported to New York," *Def. Mem.* 13, fails utterly in the face of the declarations of the Trafficker Defendants. *See D. Antico Decl.* ¶ 16 ("Julius and Paula knew that I was from NY. I told them I was from NY and I would make comments to them about how terrible the traffic was coming down from New York"); *Davern Decl.* ¶ 9 ("I am absolutely sure that the store workers at Cigarettes Unlimited

knew I was from New York."); *McGowan Decl.*  ¶ 16 ("I am one hundred per cent certain that both Paula Sloan and Julius knew that I was from New York City.  On one occasion, Julius asked me to bring him some pizza from Brooklyn, which I did."). Peters-Brandon spoke of selling to "out-of-state" customers, for whom he put black plastic bags on cases of cigarettes, *Cielakie Decl*. ¶ 35; Ex. 5, adding that  "I knew it was illegal for them to cross state lines, …. My boss told me, these people are coming. Ring them up." *Cielakie Decl*. ¶ 36; Ex. 5.

### A.  The Court Has Long-Arm Jurisdiction Over All of the Cigarettes Unlimited Defendants Under C.P.L.R.  § 302(A)(1)

The facts set forth above establish personal jurisdiction over all of the Cigarette Unlimited Defendants under C.P.L.R.  § 302(a) (1), allowing an assertion of jurisdiction over a foreign actor who "transacts any business within the state or contracts *anywhere* to supply goods or services in the state" (emphasis added). Non-domiciliaries "transact business" within the meaning of C.P.L.R. § 302(a)(1) by purposefully availing themselves of the privilege of conducting activities within New York, invoking the benefits and protections of New York laws, even by a single transaction related to the plaintiff's cause of action. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967)). *Chloe*, 616 F.3d at 169-70; *Baron Philippe de Rothschild, S.A. v. Paramount Distillers*, 923 F. Supp. 433, 436 (S.D.N.Y. 1996).

Section 302(a) (1) embraces a defendant who commits a commercial tort in the course of transacting business or contracting to supply goods or services in New York. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010). CCTA and PACT Act violations qualify as commercial torts, and thus within the ambit of C.P.L.R. § 302(a) (1). *See Welch Foods, Inc. v Goldman, Sachs & Co.*, 398 F Supp. 1393, 1399-1401 (S.D.N.Y. 1974) (referring to the general principle of tort law that violation of a criminal statute, can give rise to a civil remedy in tort);

15

*Trussell v. United Underwriters Ltd*., 228 F. Supp. 757, 765 (D. Colo. 1964)(same); *cf. Restat. 2d of Torts*, § 874A (2nd Ed. 1979).[15] The case law that applies here addresses the shipment of counterfeit goods into New York: "courts in this circuit have concluded that the single act of selling counterfeit goods in New York is sufficient to invoke jurisdiction." *EnviroCare Techs., LLC v. Simanovsky*, 2012 U.S. Dist. LEXIS 78088, at \*7-8 (E.D.N.Y. June 4, 2012); *Baron Philippe de Rothschild, S.A.,* 923 F. Supp. at 436 (personal jurisdiction found over defendants shipping infringing goods into New York). There is no meaningful distinction between shipping infringing goods into a jurisdiction and shipping untaxed, *i.e.*, contraband, cigarettes into a jurisdiction, both of which tortuously interfere with property rights. *See Pasquantino v. United States*, 544 U.S. 349 (2005); *City of N.Y. v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 445 (2d Cir. 2008) ("We have consistently held that tax losses from unpaid taxes are 'property'"), *rev'd on other gnds sub nom*, *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1 (2010).

Here Cigarettes Unlimited as a corporation *and each* Cigarettes Unlimited Defendant is alleged, by virtue of the definition of "Cigarettes Unlimited Defendants," to have "contract[ed] *anywhere* to supply goods" by selling cigarettes to the Traffickers. *Compl*. ¶¶ 52, 54, 57, 59.  The Complaint alleges that each of Cigarettes Unlimited's three stores is owned by Lash and Daniels and operated by them, their wives, and the named employees, *Compl*. ¶ 52, that each store is involved with supplying cigarettes to the Traffickers, *Compl*. ¶ 54, that the orders are processed and assembled for particular Traffickers and set aside for that Trafficker by store employees, *Compl*. ¶ 57, and loaded into the Traffickers' New York-plated vehicles by store employees. The Traffickers unanimously state that Cigarettes Unlimited employees knew that Cigarettes Unlimited supported cigarette trafficking into New York, *Cielakie Decl*. ¶ 23, 27, *D. Antico*

---

[15] The terms "crime or tort" are used interchangeably under various statutory prohibitions. See *Kidd v. Thomson Reuters Corp.*, 925 F.3d 99 (2d Cir. 2019); *Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010).

*Decl.* ¶ 16, 20; *Davern Decl.* ¶ 9; *McGowan Decl.* ¶¶ 8, 16.   The Cigarettes Unlimited Defendants thus "purposefully availed" themselves of the New York market and certainly "sought the benefits of New York's laws" where the entire basis for Cigarettes Unlimited's ability to expand into the distant New York market were New York's laws imposing steep cigarette taxes. Owners Lash and Riley both recognized that their business rested on high New York taxes. *Cielakie Decl.* ¶¶ 31, 34. The nexus between the substantive CCTA and PACT Act claims and the conduct on which jurisdiction is premised is inextricable because the CCTA and PACT claims arise out of Cigarettes Unlimited's shipments of unstamped cigarettes into New York. *See Carr-Stock v. Orthotic Rehab. Prods., Inc.*, 832 F. Supp. 2d 229, 237 (W.D.N.Y. 2011) (Defendant's New York sales of allegedly infringing goods are intimately tied to Plaintiff's patent infringement claim).[16]

### B.  Agency Jurisdiction Over The Cigarettes Unlimited Defendants C.P.L.R. § 302(A)(1)

The Second Circuit understands C.P.L.R. § 302(a)(1) to allow a corporation to serve as an agent for individual defendants, *Cyco.net, Inc.*, 383 F. Supp. 2d at 542 (citing *Retail Software Services v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988), so long as the corporation engaged in purposeful activities in New York for the benefit and with the knowledge of non-domiciliary individuals exercising some control over the corporation, *Kreutter*, 71 N.Y.2d at 467, all of which is alleged in the Complaint. *See Compl.* ¶ 52 (stores owned and operated by Cigarettes Unlimited Defendants).  In *Cyco.net, Inc.*, 383 F. Supp. 2d at 541-43, the court found jurisdiction under C.P.L.R. § 302(a) (1) over individuals because the corporation engaged in purposeful activities in New York with the consent and

---

[16] *Accord Baron Philippe de Rothschild, S.A. v. Paramount Distillers*, 923 F. Supp. 433, 436 (S.D.N.Y. 1996) (personal jurisdiction existed because shipments of allegedly infringing goods into New York "were purposeful and substantially related to plaintiffs' claim of trademark infringement").

knowledge of the individuals, who had directed the corporation to sell cigarettes to New York City residents. *Id*. The Cigarettes Unlimited Defendants do not even challenge personal jurisdiction over Cigarettes Unlimited, the corporation, and hence jurisdiction is acquired over the Cigarettes Unlimited Defendants by agency.

### C.  The Court Has Co-Conspirator Jurisdiction Under C.P.L.R.  § 302(a)(2)

An out−of−state defendant who commits a tortious act within New York through an agent is subject to personal jurisdiction under C.P.L.R.  § 302(a) (2), and co-conspirators are agents for jurisdictional purposes. *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991). (Well-settled that conspiratorial acts committed in New York by the co-conspirator of an out-of-state defendant permit jurisdiction under C.P.L.R. § 302(a) (2)).[17] Where a defendant is not alleged to have personally acted in New York, § 302(a) (2) "allows for personal jurisdiction by agency, and given the alleged conspiracy [a court] must also consider the existence of agency jurisdiction …" *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 807 (S.D.N.Y. 2017).

Co-conspirator jurisdiction requires a *prima facie* case of conspiracy, *i.e*., a primary tort and: (a) a corrupt agreement between two or more persons; (b) an overt act in furtherance of the agreement; (c) a parties' intentional participation, and (d) damage or injury. *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986). If a conspiracy is shown, personal jurisdiction requires facts (e) warranting an inference of the out-of-state defendant's membership in the conspiracy; (f) demonstrating a tortious act in New York by the co-conspirators pursuant to the conspiracy, and (g) the exercise by the out-of-state defendants of direction or control over the New York co-conspirators, or indications that the New York co-conspirators acted at the request

---

[17] *Accord Dixon v. Mack*, 507 F. Supp. 345, 348 (S.D.N.Y. 1980)("a person may be subjected to jurisdiction under C.P.L.R.  § 302(a)(2) when a co-conspirator carries out activities in New York pursuant to the conspiracy).

or on behalf of the out-of-state defendant.  *See Allstate Life Ins. Co. v. Linter Group, Ltd.*, 782 F. Supp. 215, 221 (S.D.N.Y. 1992); *Chrysler Capital Corp.*, 778 F. Supp. at 1266; *Dixon*, 507 F. Supp. at 348.

      **(a)**      **Primary Tort** – Cigarette trafficking in violation of two federal statutes, *Compl.* ¶¶ 1-4, satisfies the requirement of a primary tort. *Welch Foods, Inc.,* 398 F Supp. at 1399-1401; *Trussell,* 228 F. Supp. 757, 765.

      **(b)**      **Existence of A Conspiracy** – The Complaint alleges (a) an agreement between the Cigarettes Unlimited Defendants and the Trafficker Defendants to traffic cigarettes into New York, *Compl*. ¶¶ 2, 4, 7, 8; (b) overt acts in furtherance of that agreement, *id*.; (c) intentional participation in the conspiracy by the Cigarettes Unlimited Defendants, *Compl.* ¶¶ 57, 58; and (d) damage or injury, in the form of lost taxes. *Compl.* ¶ 2.

      **(c)**      **Membership in the Conspiracy** – "[T]he Defendants' intentional participation in furtherance of the conspiracy may be inferred from the overt acts taken by them." *Perrone v. Amato,* No. CV 09-316 (AKT), 2017 U.S. Dist. LEXIS 103642, at *100 (E.D.N.Y. June 30, 2017), *All* of the Cigarettes Unlimited Defendants are alleged to have participated in the conduct comprising the conspiratorial acts, such as making the sales, failing to provide receipts, concealing cigarettes in black plastic bags, accepting tips for those services, and failing to provide required filings to New York City officials as required by the PACT Act. *Compl.* ¶¶ 9; 59; 61, 65; *Compl.* ¶¶ 52; *McGowan Decl*. ¶¶ 7, 8; J. *Antico Decl*. ¶ 8; *D. Antico Decl.* ¶¶ 12, 13, 15. *See Cyco.net,* 383 F. Supp. 2d at 531 (fraud can consist of omissions of material information that the defendant has a duty to disclose).

      **(d)**      **Tortious Act in New York** – The Complaint and the Trafficker declarations describe the Trafficker Defendants, co-conspirators of the Cigarettes Unlimited Defendants, as

committing tortious acts in New York by selling untaxed cigarettes. *See, e.g.*, *Compl.* ¶ 61; *McGowan Decl.* ¶ 3.

(e)     **"For the benefit of" or "on behalf of"** – As in any commodity smuggling ring, the Traffickers and the Cigarettes Unlimited Defendants mutually benefit one another − a steady supply of cheap Virginia-taxed cigarettes are transported *gratis* to the lucrative New York City market, increasing Cigarettes Unlimited's sales volume by providing access to New York City customers not otherwise available to a suburban Virginia retailer.  Likewise, a New York co-conspirator is generally deemed to have acted "on behalf of" an out-of-state defendant when co-conspirators act jointly for their mutual benefit. *See Sea Trade Mar. Corp. v. Coutsodontis*, 2012 U.S. Dist. LEXIS 119206, at *25 (S.D.N.Y. Aug. 15, 2012)(reasonable to infer for jurisdictional purposes that actions by in-state defendant profiting out-of-state conspirator were taken "on behalf of" out-of-state defendant); *Allstate Life Ins. Co.* 782 F. Supp. at 221; *Chrysler Capital Corp.*, 778 F. Supp. at 1266, 1270 (requirement of direction, control, or at the request of or on behalf of satisfied by allegations that out-of-state actor suggested that in-state actor "finesse its documents," which the latter did). The Cigarettes Unlimited Defendants exerted direction and control over the Trafficker co-conspirators by setting prices, requiring advance ordering, and providing the supply of Virginia-priced cigarettes without which the entire conspiracy would fail. *See Emerald Asset Advisors v. Schaffer*, 895 F. Supp. 2d 418, 433 (E.D.N.Y. 2012) (asserting C.P.L.R. 302(a) (2) jurisdiction where the out-of-state actor's alleged "role in a conspiracy was to supply a critical and necessary part of the scheme to defraud," an attorney escrow account).

### D.  The Court Has Tortious Act Jurisdiction Under C.P.L.R.  § 302(a)(3)(ii).

C.P.L.R. §  302(a)(3)(ii) permits the assertion of jurisdiction over the Cigarettes Unlimited Defendants by virtue of their (i) commission of a tortious act without the state, (ii)

causing injury to person or property within the state, (iii) with the reasonable expectation that their conduct would have consequences in New York, while (iv) deriving substantial revenue from interstate or international commerce. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 640 F.3d 497 (2d Cir. 2011). As described above, those elements are easily satisfied as to each individual Cigarettes Unlimited Defendant. A "tortious act" is established as described above, *supra* 15, 19, as is injury to property in the form of a tax loss. *Supra* 16. A defendant's reasonable expectation of consequences within the State is objectively determined, *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999); *see also Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 363 (S.D.N.Y. 2009), and is established when a defendant can "foresee that its tortious act will have some consequences in New York, . . ." *Capitol Records*, 611 F. Supp. 2d at 363. *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 242-43 (S.D.N.Y. 2010); *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 215 (2000). An objective expectation of New York consequences by the Cigarettes Unlimited Defendants is established, *inter alia*, by Lash's statement that "Yeah, …. I knew [New York]'s where they were taking it. Yeah." *Cielakie Decl.* ¶ 32, and by Riley's assumption that his business was based on high New York taxes. *Cielakie Decl.* ¶ 34. John Lash's admission of 18 years of bootleg sales establishes that this is not a matter of "occasional sales into New York," *Boyce*, 148 F. Supp. 3d at 266; *RegenLab USA, LLC v. Estar Techs. Ltd.*, 2018 U.S. Dist. LEXIS 138065, at *14-15 (S.D.N.Y. Aug. 15, 2018), but rather a "discernible effort to serve, directly …,  a New York market …" *Darienzo v. Wise Shoe Stores, Inc.,* 74 A.D.2d 342, 346  (2d Dep't. 1980).

The very limited financial data in Cigarettes Unlimited documents, recovered even without formal discovery, shows that individual Trafficker Defendants paid *in cash* as much as $73,000 (Robert Schmidt) or $43,000 (Meryl McGowan) or $12,000 (Debra Antico) *in a single*

*visit* to Cigarettes Unlimited. *See Cielaki Decl*. Ex. 2.  Further discovery will determine whether Cigarettes Unlimited's total revenue from New York sales amounts to "substantial revenue," as seems likely.[18]

### E.   The Exercise of Personal Jurisdiction Comports With Due Process.

The two-step inquiry into whether the Cigarettes Unlimited Defendants have  sufficient minimum contacts with the Eastern District of New York to satisfy due process, and if so, whether the exercise of personal jurisdiction is reasonable, *i.e.*, comports with "traditional notions of fair play and substantial justice," *AmTrust Fin. Servs. v. Lachhini*, 260 F. Supp. 3d 316, 328 (S.D.N.Y. 2017) is satisfied here because "[o]rdinarily, . . . if jurisdiction is proper under the C.P.L.R., due process will be satisfied…," given that C.P.L.R. § 302 has jurisdictional requirements more stringent than the Constitution. *City of N.Y. v. Hatu*, 2019 U.S. Dist. LEXIS 91576, at *30 (S.D.N.Y. May 31, 2019); *Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd.*, 62 N.Y.2d 65, (1984) ("C.P.L.R. 302 does not go as far as is constitutionally permissible.").

Under comparable facts, Judge Engelmayer held that the elements of due process "make the exercise of jurisdiction entirely reasonable here." *Hatu*, 2019 U.S. Dist. LEXIS 91576 at *29.[19] The defendant in *Hatu* sold cigarettes in North Carolina knowing the cigarettes would be transported to New York, and thus could reasonably have expected to be sued in New York, did not point to any burden of defending in New York, and offered no reason why North Carolina's could overcome New York City's paramount interest in a suit claiming it was the victim "of a

---

[18] "[D]ismissal for lack of personal jurisdiction is inappropriate under 302(a)(3)(ii), even where there is *no* proof that a defendant derives substantial revenue from interstate or international commerce …" *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 468 (S.D.N.Y. 2008) (emphasis added, internal quotation omitted). The requirements for pre-discovery revenue are relaxed because revenue information is peculiarly within a defendant's control and available only through discovery. *Related Cos., L.P. v. Ruthling*, 2017 U.S. Dist. LEXIS 207857, at *15-16 (S.D.N.Y. Dec. 15, 2017).

[19] *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) ("reasonableness" of personal jurisdiction determined through (1) the burden on the defendant; (2) the forum state's interests in adjudicating the case; (3) the plaintiff's interest in convenient and effective relief; (4) judicial efficiency; and (5) the shared interest of the states in furthering social substantive policies.).

scam to cheat it of tax revenue." 2019 U.S. Dist. LEXIS 91576, at \*29-30. These apply with no less force here.

### F.   If Necessary, Jurisdictional Discovery Should Be Permitted

To the extent questions remain with respect to long-arm jurisdiction over each and every Cigarettes Unlimited Defendant, including the "Grouped Defendants," jurisdictional discovery is appropriate. Jurisdictional discovery is warranted when a plaintiff may not have made a *prima facie* showing, but has "made a sufficient start toward establishing personal jurisdiction." *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 809 (S.D.N.Y. 2017); *accord In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207-08 (2d Cir. 2003) (per curiam). A court should "take care to 'give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction'...." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quoting *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)), a concern amplified in the instant case, where "great leeway should be allowed the pleader," in showing a *prima facie* conspiracy, "since by the nature of the conspiracy, the details may not be readily known at the time of the pleading." *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 458 (S.D.N.Y. 2008) (internal citations omitted). "[I]n a case where the plaintiff has submitted evidentiary facts tending to connect the defendant to New York transactions, the conspiracy/jurisdictional issue should not be resolved and the complaint dismissed without discovery." *Emerald Asset*, 895 F. Supp. 2d at 433 (citing *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1343-44 (2d Cir. 1972)).

## II. THE "ENDS OF JUSTICE," PURSUANT TO 18 U.S.C. §1965, PERMIT ASSERTION OF PERSONAL JURISDICTION OVER EVERY CIGARETTES UNLIMITED DEFENDANT

Cigarettes Unlimited's arguments attacking jurisdiction under 18 U.S.C. § 1965 (*Def. Mem*. 9), should be rejected.[20] Cigarettes Unlimited recognizes that 18 U.S.C. § 1965(b) "permits a court to exercise personal jurisdiction over foreign RICO defendants if "personal jurisdiction based on minimum contacts is established as to at least one defendant." *Def. Mem*. 14. That element is easily met. The six Traffickers reside in this district, *Compl*. ¶¶ 31-37, and Cigarettes Unlimited has not challenged personal jurisdiction over the corporation, Lash or Riley. The sole remaining element to be established for purposes of section 1965 is whether an assertion of jurisdiction over the remaining defendants serves the "ends of justice." *See Def. Mem*. 14. It does.

The Cigarettes Unlimited Defendants' conception of the "ends of justice" requirement should be rejected, as many courts have already done. Far from involving "extraordinary circumstances," *Def. Mem*. 1, an "ends of justice" analysis closely resembles that for *forum non conveniens*, and those considerations counsel that this case proceed in this district. In arguing that "[I]t is generally accepted that 'ends of justice' jurisdiction is authorized *only* where the RICO claim could not otherwise be tried in a single action because no district court could exercise personal jurisdiction over all of the defendants," *Def. Mem*. 14 (quoting *Related Companies, L.P. v. Ruthling*, No. 17-cv-4175, 2017 WL 6507759, at *14 (S.D.N.Y. Dec. 18, 2017) (emphasis added), the Cigarettes Unlimited Defendants quote a minority position, i) not adopted by the Second Circuit, and ii) contrary to the legislative history of RICO and the general understanding of special venue sections such as §1965. The notion that that the ends of justice

---

[20] As shown above, all of the Cigarettes Unlimited Defendants are subject to personal jurisdiction under New York's long-arm statute, so it should not be necessary to address section 1965(b).

standard is met "<u>only</u>" in the absence of "one court before which all RICO defendants may be brought" (referred to herein as the "no-one-court position") has been rejected by many courts.

The absence of "one court before which all defendants may be brought" is certainly *one* means to satisfy the "ends of justice" because it avoids multiple litigations of one RICO conspiracy, but Cigarettes Unlimited nowhere explains why that concern overshadows every other factor applied in venue considerations. Even Cigarettes Unlimited's citations do not uniformly provide that the ends of justice standard is met "<u>only</u>" if there is no-one-court. *See Def. Mem.* 14 (citing *Fernando v. Fernando*, No. 09-CV-1390 (KAM) (SMG), 2010 U.S. Dist. LEXIS 79254, at *30 (E.D.N.Y. Aug. 5, 2010): "The requirements of the 'ends of justice' is generally considered to be met where no district could exercise jurisdiction over all of the defendants." (quoting *Eldred v. Comforce Corp.*, No. 3:08-CV-1171 (LEK/DEP), 2010 U.S. Dist. LEXIS 18260 (N.D.N.Y. Mar. 2, 2010). "Generally considered to be met" does not mean "exclusively met," as if there is only one way to meet the "ends of justice" standard.

The governing analysis of section 1965 in this circuit is *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 n.5 (2d Cir. 1998), which as pertinent here held only that "[T]he [RICO] statute does not specify what 'the ends of justice' are,…." After pointing out that the RICO statute was silent on what the "ends of justice are," the Second Circuit was also silent on the issue. 138 F.3d 65, 71. Nothing in *PT United* supports a conclusion that section 1965 "is available <u>only</u> where the RICO claim could not otherwise be tried in a single action." *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 314-15 (S.D.N.Y. 2010) ("In *PT United*, the Second Circuit did not offer an explanation as to what exactly the RICO statute means by 'ends of justice.'").

The only analysis of "ends of justice" element of section 1965 by an appellate court is *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1232 (10th Cir. 2006), where the Tenth Circuit held that RICO's purpose of eliminating organized crime would not be furthered by the "no one-court" position, because to do so would permit RICO violations to

> go unpunished whenever organized criminals operate within the same locale and cause harm in a distant state. Insulating such a criminal enterprise from liability, when, for instance, the victim is unable to finance long-distance litigation, is not consistent with RICO's purpose.

*Id.* at 1232. The court "conclude[d] that the 'ends of justice' analysis is not controlled by the fact that all defendants may be amenable to suit in one forum. …," but instead that "the 'ends of justice' is a flexible concept uniquely tailored to the facts of each case." *Accord Crenshaw v. Antokol*, 287 F. Supp. 2d 37, 42 (D.D.C. 2003) ("[i]n undertaking the [RICO] 'ends of justice' analysis*, courts consider a variety of factors*") (emphasis added). Numerous other decisions reject the extremely restrictive standard that would result if the "ends of justice" are met *"only"* if there is "no one court" with jurisdiction over all RICO defendants.[21]

Thus, "[i]n those forums in which the 'ends of justice' statutory limitation on jurisdiction is applied, *there appear to be few hard and fast rules* as when justice is served by the exercise of personal jurisdiction." David B. Smith & Terrance G. Reed, 1 *Civil RICO* ¶ 6.02 (2019) (Matthew Bender) (emphasis added).  "[T]he ambiguous character of an 'ends of justice' requirement … implies that district courts are vested with considerable discretion in making such a finding. . ." *Id.*  Affording district courts "considerable discretion and the absence of "hard and

---

[21] *Accord Rexam Healthcare Packaging, Inc. v. Osiris Med., Inc.*, 2010 U.S. Dist. LEXIS 21702, *13-16 (N.D. Ohio March 9, 2010) ("This Court too declines to follow the Ninth Circuit's arbitrary *Butcher's Union* rule. Instead, the applicable standard was correctly stated by the Tenth Circuit: the 'ends of justice' is a flexible concept uniquely tailored to the facts of each case."); *Rolls-Royce Corp.*, 576 F.Supp.2d at 782 (N.D.Tex. 2008) ("The court agrees with the reasoning of *Cory* and declines to follow the Ninth Circuit's restrictive interpretation of § 1965(b)"); *Miller Brewing Co. v. Landau*, 616 F.Supp. 1285, 1290-1291 (D.Wis.1985) (presence of a forum where venue would be proper as to all defendants "should not be the sole consideration [under § 1965(b)], especially where transferring the case would result in extraordinary delay").

fast rules" in finding the "ends of justice" satisfied necessarily means there is no bright line, "one size fits all" criterion for the "ends-of-justice" such as the "no-other-court" position entails.

Understanding section 1965 requires an appreciation that it controls not only personal jurisdiction, but also venue. "[I]n those jurisdictions that consider an "ends of justice" showing a jurisdictional requirement, greater clarity as to meaning of this phrase may be found from precedent construing and applying this language *as a venue provision*." 1 Civil RICO ¶ 6.02 (emphasis added). Venue "is in the nature of a convenience to litigants and subject to their disposition." *Moreno-Bravo v. Gonzales*, 463 F.3d 253, 258 (2d Cir. 2006); *Rutland R. Corp. v. Bhd. of Locomotive Eng'rs*, 307 F.2d 21, 29 (2d Cir. 1962) ("Venue is a concept of convenience."). The no-one-court rule is inconsistent with the status of 18 U.S.C. § 1965 as a venue provision, *Cyco.net,* 383 F. Supp. 2d at 543 ("Venue may be proper although a forum is not the only possible forum."); *Fisher v. Hopkins*, No. 02-7077, 2003 U.S. Dist. LEXIS 307 (S.D.N.Y. Jan. 9, 2003); *American Trade Partners, L.P. v. A-1 Intern. Importing Enterprises, Ltd*., 755 F.Supp. 1292, 1305 n.20 (E.D.Pa.1990) ("[n]owhere in section 1965(b) does it say that there must not be some other appropriate forum."). The no-one-court rule is especially inconsistent with the language and legislative history of § 1965 indicating that the provision is "a substitute venue provision that a plaintiff may utilize *if venue is not otherwise available* [under 28 U.S.C. §1391]." *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 54 (D.D.C. 2006); *Cyco.net, Inc.*, 383 F. Supp. 2d at 544 ("Congress intended the civil RICO venue provisions to be a liberalization to the federal venue statute."); *accord N.C. Mut. Life Ins. Co. v. Stamford Brook Capital, Ltd. Liab. Co.*, No. 1:16CV1174, 2019 U.S. Dist. LEXIS 166673, at *19-20 (M.D.N.C. Sep. 27, 2019) ("§ 1965 was intended to supplement, rather than supplant" the general venue provision); *Van Schaick v. Church of Scientology of Cal., Inc.*, 535 F. Supp. 1125, 1133 n.6 (D.

Mass. 1982) ("The special venue provision found in 18 U.S.C. § 1965 … is intended to liberalize the existing venue provisions."). It is impossible to square the "no one court" rule with the notion that section 1965 was intended *to expand* possible venues for a RICO action, when by definition it offers only "one court" where venue would be proper.

The facts here illustrate the rigidity of the "no one court" rule: in every RICO case in which actors in State A, (with no contact with State B), tortiously conspire with residents of State B (who have State A contacts), and cause injury in State B, a RICO case would invariably have to be venued in State A, where no injury occurred, because State A is the only forum in which both State A and State B persons are subject to jurisdiction. The glib answer proposed by the Cigarettes Unlimited Defendants − that there is jurisdiction over all defendants in Virginia (*Def. Mem*. 15), tramples on the presumption accorded a plaintiff's choice of forum, on the principle that a local controversy deserves a local forum ("a scam to cheat [the City] of its tax revenue," *Hatu*, 2019 U.S. Dist. LEXIS 91576 at *30), and shifts purported inconveniences for Virginians, onto New Yorkers, including the plaintiff City. If the purpose of § 1965 was to liberalize or expand venue opportunities, Congress could hardly have intended to force a RICO victim into an out-of-state forum *every time* its residents travelled out-of-state to undertake bad acts. *See Cyco.net, Inc.***,** 383 F. Supp. 2d at 544.

In sum, the "no one court" rule is neither "a flexible concept uniquely tailored to the facts of each case," *Cory*, 468 F.3d at 1232, nor does it permit "the flexible consideration of various factors," *Crenshaw*, 287 F. Supp. 2d at 42 nor would it "liberalize the existing venue provisions" *Cyco.net, Inc.***,** 383 F. Supp. 2d at 544 or afford district courts "considerable discretion." 1 *Civil RICO* ¶ 6.02.

28

Consideration of the traditional venue factors, *see Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (the convenience of the plaintiff's residence to the chosen forum, availability of witnesses or evidence, defendant's amenability to suit in the forum district, availability of appropriate legal assistance, and other convenience or expense reasons), establishes that the "ends of justice" standard permits this action to be heard in this district. The Cigarettes Unlimited Defendants have not challenged long-arm jurisdiction under RICO over Lash, Riley or Cigarettes Unlimited itself, so a case will unquestionably proceed in this district as against those enterprise members, and against the Traffickers. To require the City to bring a separate action in Virginia to prosecute the remaining conspirators would disfavor judicial economy. *See Suarez Corp. Indus. v. McGraw*, 71 F. Supp. 2d 769, 778-79 (N.D. Ohio 1999) ("It would not serve the ends of justice to require separate trials in different fora against parties who … have close involvement in the events underlying the plaintiff's case…"). Requiring an action in Virginia ignores the strong presumption in favor of the plaintiff City's choice of forum, *see Piper Aircraft*, 454 U.S. at 250; *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002), ignores the "great deference" to the City's choice over a suit in the City's home forum, *see Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001), and vitiates the heightened respect accorded a government's choice of venue when the controversy has meaningful ties to the forum, and the government is a forum resident, as here. *See FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 22 (D.D.C. 2008). The Cigarettes Unlimited Defendants have not articulated any burden in appearing here, but have already retained a single New York counsel to represent them all. *See Iragorri*, 274 F.3d at 71-72 (noting "the availability of appropriate legal assistance" as a venue consideration); *Rexam Healthcare Packaging, Inc. v. Osiris Med., Inc.*, 2010 U.S. Dist. LEXIS

29

21702, *13-16 (N.D. Ohio March 9, 2010) (transfer would result in delay as the parties brought new counsel up to speed.).

Should the Cigarettes Unlimited Defendants wish to argue that New York is an inconvenient forum for them – they have not – Virginia would be equally inconvenient for nearly the one-half of the defendants residing in the City, as well as for the City and its attorneys. *See United States v. Bank of Am. Account #xxxxxxxx4939*, No. 5:14-CV-723 (ATB), 2015 U.S. Dist. LEXIS 4785, at *11 (N.D.N.Y. Jan. 15, 2015) (quoting *In re National Presto Industries, Inc*., 347 F.3d 662, 665 (7th Cir. 2003) ("[w]hen government lawyers and investigators incur time and travel costs to litigate in a remote forum, the burden falls on the taxpayer, who finances the … government and who is no less worthy of the protection of the law than corporate officers, shareholders, and employees"). The Second Circuit has held that when parties are in different states, there is no forum that will avoid some inconvenience; even when that inconvenience falls equally on both sides (which the City does not concede here), the tie goes to the plaintiff. *Wyndham Associates v. Bintliff*, 398 F.2d 614, 620-21 (2d Cir. 1968).

### III. THE COMPLAINT STATES A CCTA CLAIM

Courts "must" interpret statutory language with reference to context, history, and purpose. *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014). The CCTA "is expressly concerned with the flow of contraband cigarettes between jurisdictions with differing tax obligations, and … prohibits actions taken with respect to contraband cigarettes *at all stages of the distribution chain*—shipping, transporting, receiving, possessing, selling, *distributing* and purchasing …" *City of N.Y. v. Milhelm Attea & Bros.*, 2012 U.S. Dist. LEXIS 116533, at *41 (E.D.N.Y. Aug. 17, 2012) (emphasis added)). "[T]he legislative history of the CCTA … reveals Congress's contemporaneous interest in addressing the problem of cigarette 'bootlegging,' whereby cigarettes are illegally shipped from low-tax to high-tax states. *Chavez*, 2012 U.S. Dist.

LEXIS 42792, at *10-11 (citing *Attorney Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 129 (2d Cir. 2001) (quoting H.R. Rep. No. 95-1778, at *7) (1978) ("In 1978, Congress outlawed trafficking in contraband cigarettes.... Congress knew that '[t]here [was] widespread traffic in cigarettes *moving in or otherwise affecting interstate or foreign commerce*") (emphasis added).  By alleging that the Cigarettes Unlimited Defendants knowingly engage in the interstate *distribution* of cigarettes, the Complaint targets the very conduct Congress intended to prohibit under the CCTA. Multiple decisions in this circuit, two in this district, hold that cigarette sellers violate the CCTA by conduct identical to that here.[22]

The CCTA makes it unlawful for "any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes." 18 U.S.C. § 2342(a). Contraband cigarettes are "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes *are found* ...," 18 U.S.C. § 2341.[23] The Cigarettes Unlimited Defendants contend they are immune from the reach of the CCTA because they sell cigarettes in Virginia, in compliance with Virginia law, and thus the cigarettes cannot be "contraband" in Virginia.  *Def. Mem.* 17. But the CCTA was enacted to outlaw cigarette trafficking involving "widespread traffic in cigarettes *moving in or otherwise affecting interstate ... commerce*." *Attorney Gen. of Can.*, 268 F.3d at 129 (emphasis added)(quoting *H.R. Rep. No. 95-1778*, at *7) (1978). A contention that the CCTA does not reach cigarette sellers who comply with their state's own tax laws knowing the cigarettes they

---

[22] *City of N.Y. v. Hatu*, 2019 U.S. Dist. LEXIS 91576, at *32 (S.D.N.Y. May 31, 2019); *City of N.Y. v. Chavez*, 944 F. Supp. 2d 260 (S.D.N.Y. 2013); *City of N.Y. v. Golden Feather Smoke Shop, Inc.*, 2013 U.S. Dist. LEXIS 47037 (E.D.N.Y. Mar. 29, 2013); *City of N.Y. v. Milhelm Attea & Bros.*, 2012 U.S. Dist. LEXIS 116533, at *41 (E.D.N.Y. Aug. 17, 2012); *see also New York v. United Parcel Serv., Inc.*, 17-1993-cv, Dkt. No 295-1; *City of New York v. Gordon*, 155 F. Supp. 3d 411, 420 (S.D.N.Y. 2015); *City of N.Y. v. FedEx Ground Package Sys.*, 91 F. Supp. 3d 512 (S.D.N.Y. 2015); *City of New York v. LaserShip, Inc.*, 33 F. Supp. 3d 303, 312 (S.D.N.Y.2014); *City of N.Y. v. Wolfpack Tobacco*, 2013 U.S. Dist. LEXIS 129103 (S.D.N.Y. Sep. 9, 2013).

[23] Provided that the jurisdiction uses tax stamps to evidence tax payment. *See* 18 U.S.C. § 2342(a).

sell will be immediately transferred to another state, *Def. Mem*. 17, flies in the face of that congressional purpose.  "[I]f the CCTA were not effective at reaching cross-border transactions, then the CCTA could only ever effectively reach wholly in-state violations…." *City of N.Y. v. Chavez*, 944 F. Supp. 2d 260, 266 (S.D.N.Y. 2013). Numerous decisions have rejected the very argument offered by the Cigarettes Unlimited Defendants.[24] The CCTA, which prohibits the *distribution* of contraband cigarettes, imposes liability for transactions in which cigarettes *become* contraband through interstate movement. For example, in *City of N.Y. v. Chavez*, 2012 U.S. Dist. LEXIS 42792 (S.D.N.Y. 2013), the City was awarded summary judgment on a CCTA claim against a Kentucky-licensed cigarette seller who sold cigarettes in compliance with Kentucky law but shipped the cigarettes into New York:

> The Court agrees with the City's construction of the CCTA, that, to establish liability, the statute does not require that the cigarettes sold, shipped, or transported be contraband at the time of the sale, shipment, or transport. Rather, it suffices that the cigarettes become contraband as a result of the sale and shipment. To interpret the statute otherwise would, effectively, limit liability to the possession of contraband cigarettes, which Congress did not intend.

*Chavez*, 2012 U.S. Dist. LEXIS 42792 at *9-12 (court's emphasis)). This makes perfect sense because:

> … Congress intended for the CCTA to cover circumstances where a wholesaler or distributor of cigarettes sells and ships cigarettes that become contraband because of that sale and shipment. . . .

---

[24] *See City of N.Y. v. Hatu*, 2019 U.S. Dist. LEXIS 91576, at *32 (S.D.N.Y. May 31, 2019); *City of N.Y. v. Chavez*, 944 F. Supp. 2d 260 (S.D.N.Y. 2013); *City of N.Y. v. Golden Feather Smoke Shop, Inc.*, 2013 U.S. Dist. LEXIS 47037 (E.D.N.Y. Mar. 29, 2013); *Chavez*, 2012 U.S. Dist. LEXIS 42792 at *9-12; *Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533, at *41; *United States v. Montour*, 2010 U.S. Dist. LEXIS 64705 (W.D. Wash. May 3, 2010); *United States v. Mahoney*, 2007 U.S. Dist. LEXIS 19074, at *4-5 (E.D. Wash. Mar. 19, 2007); *United States v. Mahoney*, 2006 U.S. Dist. LEXIS 66382, at *34 (E.D. Wash. Sep. 15, 2006); *United States v. Funds from First Reg'l Bank*, 639 F. Supp. 2d 1203, 1210 (W.D. Wash. 2009).

*Chavez* at \*11-13 (emphasis added). The decision by Judge Engelmayer in *Hatu* applied that reasoning to determine whether:

> (1) a wholesaler[25] who did not physically bring contraband cigarettes into New York for sale in New York can be liable under the CCTA; and (2) whether a wholesaler can be held liable for such a transfer where, at the time the cigarettes left the immediate custody of the wholesaler, they were not yet contraband.

2019 U.S. Dist. LEXIS 91576, at \*33. Answering "(1)" in the affirmative, *id.* at \*35, the *Hatu* court concluded as to "(2)":

> [T]here is no support for Hatu's theory that the cigarettes must have become "contraband" at the time when the upstream distributor defendant relinquished custody of them to a downstream co-conspirator. The CCTA's text does not support imputing this limitation on liability or exonerating a distributor who distributes cigarettes that have been taxed at the rate of a source state where the distributor intends them to be delivered, without additional taxes, to a higher-tax destination state. On the contrary, …. [t]he act of transporting the cigarettes into New York for sale while evading New York's cigarette taxes, which, as alleged, derived from Hatu's delivery of the cigarettes to the transporters and the retailers, is what made them contraband.

*Id.* at \*36-38 (quotation and citation to *Chavez* omitted).

With no analysis, the Cigarettes Unlimited Defendants ignore this authority, advancing the same argument discredited in *Hatu* and *Chavez*:

> What the CCTA criminalizes is not the sale of cigarettes that later become "contraband"; it criminalizes possessing or engaging in transactions with cigarettes that *are* "contraband." Under the CCTA, what makes a cigarette "contraband" is the fact that it does not have a stamp required in the jurisdiction "where such cigarettes are found." 18 U.S.C. § 2341(2). Therefore, to determine if a defendant violated the CCTA, a court must determine if they "shipped, transported, received, possessed, sold, distributed or purchased cigarettes" that lacked a tax stamp while the cigarettes

---

[25] The chain of sales in *Hatu* was more attenuated than here. In *Hatu*, in-state wholesalers complied with all local law and sold to in-state retailers, who in turn sold to traffickers.  In selling to the retailers, the wholesalers knew the cigarettes were intended for transport to New York. *See Hatu*, 2019 U.S. Dist. LEXIS 91576, at \*4-8. Here, Cigarettes Unlimited sold directly to traffickers, with knowledge of intended New York deliveries.

> were located in a jurisdiction that required a tax stamp to be
> affixed to them.

*Def. Mem*. 17 (emphasis added).

> Since only a Virginia cigarette stamp was required to be affixed to
> the cigarettes while they were in Virginia, and it is undisputed that
> the cigarettes possessed a Virginia cigarette stamp, *id.*, when the
> Cigarettes Unlimited Defendants possessed and distributed
> cigarettes to the Customer Defendants, the cigarettes were not
> "contraband" under the CCTA.

*Id.*  This "argument" does no more than assert its conclusion, *i.e.*, that "where such cigarettes are

found" really means "where the cigarettes are found *in the defendants' possession*." That

argument was cogently rejected in *Chavez*, which observed that if the statute were so read, the

prohibition against "shipping, transporting, receiving, possessing, selling, distributing, or

purchasing contraband cigarettes would be surplusage because all such conduct could be

subsumed under a single prohibition against *possession* of unstamped cigarettes. *Chavez*, 2012

U.S. Dist. LEXIS 42792 at *9-12 ("To interpret the statute [as requiring that the cigarettes be

contraband in the hands of the defendant] would, effectively, limit liability to the possession of

contraband cigarettes, which Congress did not intend.").

The CCTA has no language referencing transactions with cigarettes that "are"

contraband. The Cigarettes Unlimited Defendants notably fail to provide any statutory language

to that effect. Rather, the CCTA provides that "It shall be unlawful for any person knowingly to

ship, transport, receive, possess, sell, *distribute*, or purchase contraband cigarettes …," 18

U.S.C.S. § 2342, which are "….cigarettes, which bear no evidence of the payment of applicable

State or local cigarette taxes in the State or locality *where such cigarettes are found*…" 18

U.S.C. 2341 (2) (emphasis added). In specifying the key element defining cigarettes as

contraband – whether the cigarettes are stamped or not – that status is measured by "*where such

cigarettes are found*…" and accordingly is agnostic as to the time and place of the finding.

"Contraband" status is determined by *where* such cigarettes are found…," not by <u>when</u> they are found.  The conduct covered by the CCTA -- shipment, transport, and, especially, *distribution* – contemplates movement, such that the cigarettes will be "found" during the course of a transaction across multiple jurisdictions, with different stamping requirements, hence the prohibition against *distribution* of contraband cigarettes.[26] Knowing of the existence of traffic in cigarettes moving in interstate commerce, *Attorney Gen. of Can.*, 268 F.3d at 129, and that stamping requirements differed across states, Congress would not rationally have confined CCTA liability *solely* to the state in which transport, distribution, or shipment commenced. Because the CCTA is intended to "prohibit[] actions taken with respect to contraband cigarettes *at all stages of the distribution chain* …." *Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533, at *41, Cigarettes Unlimited is liable under the CCTA because it *distributed* unstamped cigarettes found in New York.

The City certainly did not seek here to expand the meaning of the CCTA beyond the plain meaning of the statute, *Def. Mem.* 17, where two courts adopted the City's position, *see Hatu*, 2019 U.S. Dist. LEXIS 91576, at *35-38; *City of N.Y. v. Chavez*, 944 F. Supp. 2d 260 (S.D.N.Y. 2013), and were not outliers in doing so, but in fact relied on Eastern District precedents to do so. *Hatu* and *Chavez* both relied for their holdings on decisions by Judge Amon of this district which found CCTA liability on facts closely analogous to those here – in which cigarettes "became" contraband after they left possession of a seller because they were unstamped where the sellers' cigarettes were found. *See Hatu* 2019 U.S. Dist. LEXIS 91576, at *35-38; (citing *Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533 at *38-*45)); *Chavez*, 2012 U.S. Dist. LEXIS 42792 (citing *Golden Feather,* 2009 U.S. Dist. LEXIS 116533 at *38-*45).

---

[26] Especially bearing in mind that "distribution" must be something different than shipment or transport.

In *Milhelm Attea* and *Golden Feather*, the defendant sellers argued (correctly) that they had no obligation to affix City tax stamps to the cigarettes they had sold outside of New York City, just as Cigarettes Unlimited could rightfully contend that it has no obligation to affix New York stamps to cigarettes it sells in Virginia. The *Milhelm Attea* and *Golden Feather* courts nonetheless held under comparable facts – a seller with no obligation to sell New York City stamped cigarettes who sold cigarettes knowing that others would transport the cigarettes into New York City, where stamps were required − violated the CCTA. *See Milhelm Attea,* 2012 U.S. Dist. LEXIS 116533, at *47. The sellers' knowledge that the downstream sales to the City would follow, made their conduct "materially indistinguishable from selling bulk quantities of unstamped cigarettes directly to members of the public." *Hatu*, 2019 U.S. Dist. LEXIS 91576, at *36 (quoting *Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533, [WL] at 22.

### A.  The City Has Pleaded That the "Grouped Defendants" Violated the CCTA

The Cigarettes Unlimited Defendants assert that the City has not alleged that "any of the Grouped Defendants sold, or otherwise participated in the distribution of under-taxed cigarettes." *Def. Mem*. 18. This is nonsensical. The Complaint provides:

> Defendants John A. Lash, III, Anita Lash, Stephen D. Riley, Mary Riley, Margaret L. Clark, Julius Peters-Brandon, Joanna S. Petties, Paula K. Sloan, Derrick L. Whiting, Elizabeth R. Windham and John or Jane Doe 1-15 are owner/principals, associates or employees of Cigarettes Unlimited (hereafter, when referred to collectively, the "Cigarettes Unlimited Defendants").

*Compl*. ¶ 5.  The import of this definition is that when the term "Cigarettes Unlimited Defendants" alleges, for example, a sale of unstamped cigarettes, it is a shorthand equivalent of an allegation that "John A. Lash, III, Anita Lash, Stephen D. Riley, Mary Riley, Margaret L. Clark, Julius Peters-Brandon, Joanna S. Petties, Paula K. Sloan, Derrick L. Whiting, Elizabeth R. Windham and John or Jane Doe 1-15 sold unstamped cigarettes," as if those individual names

36

were strung out in the awkward sentence that would ensue if a shorthand reference to each individual were not employed. Paragraph 7 of the Complaint alleges that

> the Traffickers make monthly purchases from Cigarettes Unlimited *and the Cigarettes Unlimited Defendants* of as much as 15,000 cartons of cigarettes, and have done so over the course of years, transporting the cigarettes to New York City, principally to Staten Island and Brooklyn, for later sale…

*Compl*. ¶ 7. The paragraph thus alleges that Anita Lash, Stephen and Mary Riley, Biller, Clark, Fox, Pearson, Petties, Whiting, Whitehead, and Windham, (*i.e.*, the "Grouped Defendants" (*Def. Mem*. 4)) sold the Traffickers 15,000 cartons of cigarettes per month, over the course of years. Every other allegation of the Complaint that utilizes the definition "the Cigarettes Unlimited Defendants" makes an allegation against Anita Lash, Stephen and Mary Riley, Biller, Clark, Fox, Pearson, Petties, Whiting, Whitehead, and Windham, and all others included in the shorthand designation. *See, e.g.*, *Compl*. ¶¶ 73-75, 78.[27]

These allegations are buttressed by paragraphs 52 and 53 of the Complaint, which allege that each of Cigarettes Unlimited's three stores engage in cigarette trafficking and that each store is operated by the Cigarettes Unlimited Defendants. Discovery will particularize the conduct of the Grouped Defendants who knowingly participated in distributing bootleg cigarettes. The Supreme Court has observed that Rule 8 "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), an expectation that, based on the abundant facts of bootlegging even prior to discovery, is more than reasonable.

---

[27] The Cigarettes Unlimited Defendants assert that "the Complaint lists twenty alleged sales, none identify any of the Grouped Defendants as parties to the transactions." *Def. Mem*. 18. The City listed twenty sales as *examples* of the transactions in which the Cigarettes Unlimited Defendants, including the Grouped Defendants participated. *See Compl*. ¶ 61. But the Complaint also alleges sales by the Cigarettes Unlimited Defendants of more than 15,000 cartons a month to bootleggers, *Compl*. ¶ 7, over 18 years.

### B. The City Has Pleaded the "Other" Elements of CCTA Violations As To The "Grouped Defendants"

Cigarettes Unlimited asserts that "[t]he City has not alleged that any of the Grouped Defendants sold, or otherwise participated in the distribution of, under-taxed cigarettes," complaining of the absence of "particularized" allegations, such as at which store a Grouped Defendant worked, or of descriptions of the "Grouped Defendants" "committing the offenses," acting with scienter, or making sales in excess of 10,000 cigarettes. *Def. Mem.* 19.

There are four elements to a CCTA violation:

> [T]hat a party (1) knowingly 'ship, transport, receive, possess, sell, distribute or purchase (2) more than 10,000 cigarettes (3) that do not bear tax stamps, (4) under circumstances where state or local cigarette tax law requires the cigarettes to bear such stamps.

*City of N.Y. v. Golden Feather Smoke Shop, Inc.*, 2009 U.S. Dist. LEXIS 76306, at *74-75 (E.D.N.Y. Aug. 25, 2009). The necessary allegations of a CCTA claim are thus not elaborate. The court in *New York v. UPS*, 131 F. Supp. 3d 132, 138 (S.D.N.Y. 2015), *aff'd*, 17-1993-cv, Dkt. No 295-1 at 9 (2d Cir. November 7, 2019), held that allegations of UPS's "knowing[] deliver[y] [of] enormous quantities of unstamped, untaxed cigarettes to persons throughout the United States …" were "sufficient to provide the grounds upon which plaintiffs' [CCTA] claims rest," and denied a motion to dismiss. Cigarettes Unlimited cites no authority for its notion that CCTA allegations must be "particularized," by naming the store from which a contraband sale was made, *see Def. Mem.* 19, or by "describing" a defendant committing a CCTA offense. *Id.* The Complaint alleges that individually-named persons (whom Cigarettes Unlimited chooses to designate as "the Grouped Defendants") operate stores selling as many as 15,000 cartons of cigarettes each month, and have done so for years, *Compl.* ¶ 7, that they have done so knowing the buyers come from New York, *Compl.* ¶ 87, and that they receive orders and fill those orders from the Traffickers knowing that the cigarettes are not affixed with New York tax stamps, for

immediate transport to New York. *Compl.* ¶¶ 74, 84.  That is sufficient. *See UPS*, 131 F. Supp. at 138, *aff'd*, 17-1993-cv, Dkt. No 295-1 (2d Cir.).

### C.    The City Has Pleaded CCTA Violations Against Peters-Brandon and Sloan

Julius Peters-Brandon and Paula Sloan argue that there are no allegations sufficient to allege their violation of the CCTA, an absurd contention in the face of the Traffickers' Declarations naming Peters-Brandon and Sloan as central figures in Cigarettes Unlimited's trafficking. See *D. Antico Decl.* ¶_13; *McGowan Decl.* ¶ 7, 16; *Davern Decl.* ¶¶ 3-5, 8, 9. Peters-Bandon himself admits to selling cigarettes to out-of-state buyers who he believed were operating illegally. *Cielakie Decl.* ¶¶ 35, 36; Ex.5.

### IV.    THE CITY STATES RICO AND RICO CONSPIRACY CLAIMS

The Cigarettes Unlimited Defendants offer no basis to distinguish the RICO pleadings in this case from the pleadings in the several decisions that have uniformly denied dismissal of City RICO claims premised on CCTA predicates.[28]  As established above, the City has pleaded CCTA claims, so Cigarettes Unlimited's principal argument for dismissal of the RICO claims, absence of a predicate offense, fails. *See Def. Mem.* 21.  The Complaint also pleads vastly more than two predicate acts, *see Compl.* ¶¶ 7, 61; *Def. Mem.* 20 ("the Complaint lists twenty alleged sales'), hardly surprising where John Lash admits to 18 years of bootlegging, *supra* at 1, so that argument (*Def. Mem.* 21-22) fails too.

Finally, Cigarettes Unlimited's contentions concerning "grouped pleading" fail yet again. *See Def. Mem.* 22.  Every case cited as supporting dismissal for "grouped pleading" addressed

---

[28] *See, e.g.*, *City of N.Y. v. Hatu*, 2019 U.S. Dist. LEXIS 91576, at *32 (S.D.N.Y. May 31, 2019); *New York v. United Parcel Serv., Inc.*, 131 F. Supp. 3d 132, 138 (S.D.N.Y. 2015); *City of New York v. Gordon*, 155 F. Supp. 3d 411, 420 (S.D.N.Y. 2015); *City of N.Y. v. FedEx Ground Package Sys.*, 91 F. Supp. 3d 512 (S.D.N.Y. 2015); *City of New York v. LaserShip, Inc.*, 33 F. Supp. 3d 303, 312 (S.D.N.Y.2014); *City of N.Y. v. Chavez*, 944 F. Supp. 2d 260 (S.D.N.Y. 2013).

pleading *under Rule 9*, which expressly demands particularized pleading of RICO predicates based in fraud. *Id.*[29] But no predicate acts sounding in fraud are alleged in the Complaint and Cigarettes Unlimited's arguments invoking Rule 9 are entirely inapposite.

**Operation or Management** – The City's allegations of "operation or management" are sufficient to meet the "low hurdle" required to satisfy this element at the pleading stage, which requires only that a RICO defendant have played "*some* part in directing [the enterprise's] affairs,'" not, as Cigarettes Unlimited contends, that the defendant *be* management. *Def. Mem*. 23. Lo w e r -level participants satisfy the operation or management element by "knowingly implement[ing] management's decisions" to commit crimes. *MCM Partners, Inc. v. Andrews-Bartlett & Assocs*., 62 F.3d 967, 978-79 (7th Cir. 1995); *see Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995) (quoting *Reves*, 507 U.S. at 540) ("'lower-rung participants' whose activities were conducted 'under the direction of upper management'" may be liable under 1962(c)).

Operation or management is usually not successfully addressed on a motion to dismiss, because it is largely a fact question. *First Capital Asset Mgmt., Inc. v. Satinwood, Inc*., 385 F.3d 159, 176 (2d Cir. 2004)); *see also LaserShip*, 33 F. Supp. 3d at 310.[30]

Having properly pleaded a substantive RICO claim, which is defendants' only argument for dismissing the RICO conspiracy claim, *Def. Mem*. 24, the latter claim stands as well.

---

[29] Defendants cite *In re Platinum & Palladium Commodities Litig*., 828 F. Supp. 2d 588, 602 (S.D.N.Y. 2011); *Tooker v. Guerrera*, No. 15-CV-2430(JS)(ARL), 2016 U.S. Dist. LEXIS 107757, at *28 (E.D.N.Y. Aug. 15, 2016) (…these allegations …do not even approach the level of specificity required by Rule 9(b). *See* FED. R. CIV. P. 9(b)"); *Gross v. Waywell*, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009) (only mail and wire fraud predicate acts); *Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d 193 (E.D.N.Y. 2006) (mail and wire fraud predicates).

[30] Moreover, although a substantive RICO claim under § 1962(c) requires an allegation of operation or management by the defendant, "[n]o such requirement exists under Section 1962(d)," *United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000), for a RICO conspiracy claim.

### V. THE PACT ACT DEFINES DEFENDANTS ANITA LASH, MARY RILEY, BILLER, CLARK, FOX, PEARSON, PETERS-BRANDON, PETTIES, SLOAN, WHITING, WHITEHEAD, AND WINDHAM AS "DELIVERY SELLERS"

Conceding that the City's PACT Act claim may proceed against "Cigarettes Unlimited and its two owners, John Lash and Stephen Riley," *Def. Mem*. 26, the Cigarettes Unlimited Defendants make the odd argument that "[t]here is *no case law* to support classifying Anita Lash, Mary Riley, Biller, Clark, Fox, Pearson, Peters-Brandon, Petties, Sloan, Whiting, Whitehead, and Windham" as PACT Act "delivery sellers," because they are "ordinary employees." *Def. Mem*. 26 (emphasis added). The defendants look to the (rather sparse) PACT Act case law, claiming to be unable to find any proceedings against "employees," only "owners" or "entities." *Id*. But "case law" is not the first source for a definition of statutory terms, and the above argument is notably missing *any* language from the PACT Act addressing "delivery-sellers." *See id*. The PACT Act in fact unambiguously defines that term:

> Delivery seller. The term "delivery seller" means a person who makes a delivery sale.

> Person. The term "person" means an individual, …

15 U.S.C. § 375 (6) and (10).  Thus, a "delivery-seller" is an *individual* who makes a delivery sale. The Complaint alleges that the Cigarettes Unlimited Defendants made delivery-sales. *Compl*. ¶¶ 99-108. Those defendants are certainly individuals and accordingly the Complaint pleads that the "Grouped Defendants," are PACT Act delivery-sellers, whether or not they are "ordinary employees."

**Stephen Riley** – Contending that the City has "failed to state a PACT Act claim" against Stephen Riley, *Def. Mem*. 27, Cigarettes Unlimited cites a single case that addresses personal jurisdiction. *Id*. (citing *State of N.Y. v. Mountain Tobacco Co.*, No. 12-CV-6276, 2016 WL 324970, at *2 (E.D.N.Y. Jan. 26, 2016) (finding that New York State could not establish

jurisdiction "over the owner of a cigarette company …"). The decision does not at all address the merits of a PACT Act claim against "the owner of a cigarette company," and provides no authority to support dismissing Riley. Instead, Cigarettes Unlimited contends that despite Riley's conceded ownership of Cigarettes Unlimited, "there is no allegation that he made a 'delivery sale' such that he violated the PACT Act." *Def. Mem*. 27. This is incorrect for the reasons explained above. Riley's inclusion in the definition "Cigarettes Unlimited Defendants," *Compl*. ¶ 5 means that every allegation of a PACT Act violation by "the Cigarettes Unlimited" is an allegation against "Stephen Riley." *See Compl*. ¶¶ 99-108. Second, the Complaint alleges PACT Act filing violations, not only delivery-sales violations. *Compl*. ¶¶9, 103. Cigarettes Unlimited does not even address these violations, so that the PACT claim stands against Mr. Riley.

## CONCLUSION

For all of the foregoing reasons, the motion to dismiss by the Cigarettes Unlimited Defendants should be denied in its entirety.

Dated:      New York, New York
            November 11, 2019

JAMES E. JOHNSON
Corporation Counsel of the
  City of New York
Attorney for Plaintiff the City of New York
100 Church Street, Room 20-99
New York, New York 10007
(212) 356-2032

By:      /s/ Eric Proshansky
         Eric Proshansky (EP 1777)
         Assistant Corporation Counsel